# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRIS SEVIER, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 3:13-CV-607 |
| | } | |
| APPLE INC., et al., | } | District Judge Todd J. Campbell |
| | } | Magistrate Judge E. Clifton Knowles |
| Defendants. | } | |

### APPLE INC. AND HEWLETT-PACKARD COMPANY'S
### MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
### THE FIRST AMENDED COMPLAINT

Sara A. Ford (admitted pro hac vice)
*sford@lightfootlaw.com*
Jeffrey P. Doss (admitted pro hac vice)
*jdoss@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone:     (205) 581-0700
Facsimile:     (205) 581-0799

Thomas A. Wiseman III, #11738
*tom@wisemanashworth.com*
WISEMAN ASHWORTH LAW GROUP PLC
511 Union Street, Suite 800
Nashville, Tennessee 37219
Telephone:     (615) 254-1877
Facsimile:     (615) 254-1878

## TABLE OF CONTENTS

I.    **Standard of Review**................................................................................................**2**

II.   **Statement of Facts**...............................................................................................**2**

III.  **Discussion**...............................................................................................................**5**

    A.    Fraudulent Misrepresentation ...........................................................................6

    B.    Products Liability and Res Ipsa Loquitur Relating to Personal Injury ................10

    C.    Res Ipsa Loquitur Relating to Injury of Waste .....................................................12

    D.    Outrageous Conduct and Intentional Infliction of Emotional Distress................15

    E.    Tortious Interference...........................................................................................18

    F.    Negligent Infliction of Emotional Distress ..........................................................19

IV.   **Conclusion** ...........................................................................................................**22**

**Certificate of Service** .......................................................................................................**23**

i

## APPLE INC. AND HEWLETT-PACKARD COMPANY'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Defendants Apple Inc. ("Apple") and Hewlett-Packard Company ("HP") respectfully request that the Court dismiss the First Amended Complaint,[1] filed by Plaintiff Chris Sevier.

This lawsuit raises the question of whether state tort law requires Apple and HP to become censors of the internet – to affirmatively block access to pornography on their products. Mr. Sevier – who is an attorney and, therefore, is not entitled to the latitude ordinarily afforded to pro se litigants[2] – alleges that he developed an addiction to pornography because Apple and HP failed to engage in content-based censorship and, as Mr. Sevier puts it, "to help us guys protect ourselves from ourselves."[3] He requests that this Court deem Apple's and HP's products to be defective – defective because their computers are not sold pre-installed with pornography filters. In other words, plaintiff alleges that Apple's and HP's computers are defective because Apple and HP do not choose for their customers which third-party internet content they should or should not view.

The prospect of preemptively filtering pornographic material poses an array of difficulties, not the least of which is defining what is and what is not pornography. Navigating the line between appropriate and offensive is troublesome because, as the Supreme Court once observed, "one man's

---

[1]      [Doc. #28].

[2]      [Doc. #28 ¶ 103] ["The Plaintiff is an attorney and is not a scoff law [sic]."]; see also Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001) ("Smith is a lawyer proceeding pro se. While we are generally obliged to construe pro se pleadings liberally, we decline to do so here because Smith is a licensed attorney."); Olivares v. Martin, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977) ("Mr. Olivares proceeds pro se in his appeal. We cannot accord him the advantage of the liberal construction of his complaint normally given pro se litigants because he is a licensed attorney."); Friederichs v. Gorz, 624 F. Supp. 2d 1058, 1063 n. 5 (D. Minn. 2009) (same); Richards v. Duke Univ., 480 F. Supp. 2d 222, 234 (D.D.C. 2007) (same).

[3]      [Doc. #28 ¶ 105].

vulgarity is another's lyric."[4]  But setting aside those difficulties, this action should be dismissed because Mr. Sevier has failed to state a plausible claim against Apple and HP.  Accordingly, each count against Apple and HP should be dismissed.

## I.  <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'"[5] but "a legal conclusion couched as a factual allegation" need not be accepted as true.[6]  Instead, a complaint "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."[7]  On that account, "[t]his standard demands that the factual allegations 'raise a right to relief above the speculative level' and 'nudge[] the[] claims across the line from conceivable to plausible.'"[8]  "In the final analysis, '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"[9]

## II.  <u>STATEMENT OF FACTS</u>

Mr. Sevier – who, rather ironically, states that he  "love[s] Apple and [HP]" and describes them as being "pro-family, pro-values, pro-education, pro-science, [and] pro-progress"[10] – allegedly

---

[4]      <u>Cohen v. California</u>, 403 U.S. 15, 25 (1971).

[5]      <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

[6]      <u>Twombly</u>, 550 U.S. at 555.

[7]      <u>Twombly</u>, 550 U.S. at 555.

[8]      <u>Eerie County, Ohio v. Morton Salt, Inc.</u>, 702 F.3d 860, 867 (6th Cir. 2012) (quoting <u>Twombly</u>, 550 U.S. at 555, 570).

[9]      <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).

[10]      [Doc. #28 ¶ 3].

purchased an Apple computer (hereinafter "the Apple Computer") and an HP computer (hereinafter "the HP Computer"). Not surprisingly, these computers, like virtually all computers produced in the past decade, allowed him to access the internet.[11] As Mr. Sevier acknowledges, the internet provides access to a vast amount of data, including pornography, which, according to Mr. Sevier, is viewed by "40,000,000 Americans" on a "daily" basis.[12]

Mr. Sevier alleges that he "stumbled into" pornography on the Apple Computer "when he misspelled 'Facebook.com.'"[13] In his initial version of the Complaint, filed on June 19, 2013, Mr. Sevier elaborated on that incident: "In using safari, the Plaintiff accidentally misspelled 'facebook.com' which lead him to 'fuckbook.com' and a host of websites that caused him to see pornographic images that appealed to his biological sensibilities as a male . . . ."[14] Similarly, Mr. Sevier claims that, while using the HP Computer, he again "stumbled into" pornography "when he type[d] 'cream pie' in a search engine because he was interested in making one."[15]

Following these exposures to internet pornography, Mr. Sevier claims that he "was relentless[ly] enticed to look at pornography by the constant pop ups" – none of which were produced or sponsored by Apple or HP – "that amounted to 'hooks.'"[16] "Upon stumbling into porn," Mr. Sevier alleges he "discovered that [t]he pornography was crafted so that viewers could

---

[11]     [Doc. #28 ¶¶ 62-63] ["Recently, the Plaintiff purchased an Apple Computer from the Apple Store. The Plaintiff purchased a Hewlett Packard from a store that sells them. The computers came with preinstalled software that was intentionally designed to allow the Plaintiff to incorporate materials on the internet on the device."].

[12]     [Doc. #28 ¶ 22].

[13]     [Doc. #28 ¶ 81].

[14]     [Doc. #1 ¶ 40].

[15]     [Doc. #28 ¶ 80].

[16]     [Doc. #28 ¶ 82].

3

escape reality and to numb pain through vicarious methodology."[17] Mr. Sevier says that his purportedly inadvertent "discovery" of internet pornography "hijacked his capacity for intimacy" and, for him, "became addicting."[18] According to Mr. Sevier, his "quality of life suffered" as a result of his pornography addiction, and he "lost his wife and child . . . ."[19]

Mr. Sevier then filed this lawsuit with the purported objective of "help[ing] . . . guys protect [them]selves from [them]selves."[20] As a putative solution, Mr. Sevier proposes that Apple and HP – and, by extension, presumably every other manufacturer of every other device that provides internet connectivity – be required to install filters on their products, keyed to the user's age:

> Plaintiff demands a preliminary and permanent injunction be imposed on products created by Apple and Hewlett Packard, going forward that requires the installation of software that makes reasonable attempts to block pornography online. The Plaintiff demands that the injunction cause Hewlett Packard and Apple to comply with child obscenity laws. The Plaintiff asks that the filtering software not be removed, by Apple or Hewlett Packard unless the purchaser can prove that he is over 18 years of age and requests that the filters be removed. Otherwise, the filters
> should remain in place.

[Doc. #28 ¶ 156.1].[21]

In other words, Apple and HP are to be censors of the internet, tasked with the responsibility of affirmatively preventing adults, like Mr. Sevier, from accessing internet pornography unless they first prove their age and obtain a password to unlock the filter.[22] Mr. Sevier self-servingly

---

[17]    [Doc. #28 ¶¶ 84, 87-88].

[18]    [Doc. #28 ¶¶ 89, 90].

[19]    [Doc. #28 ¶¶ 91-92].

[20]    [Doc. #28 ¶ 105].

[21]    [Doc. #28 ¶ 144] ["Apple and Hewlett Packard could have easily sold its devise [sic] with filtering software installed which required the Plaintiff to take an additional step to acquire a password that was specifically designed to have the filter removed with little burden to itself."].

[22]    [Doc. #28 ¶ 156.1].

hypothesizes that "he would have never opted to remove the filter, even if the option was available to do so."[23]

Mr. Sevier asks the Court to impose this role on Apple and HP, all the while acknowledging that filtering software is widely available. He does not allege that Apple and HP sold him an internet browser incapable of integrating with filtering programs. Instead, consistent with his goal of "help[ing] . . . guys protect [them]selves from [them]selves," Mr. Sevier summarily asserts that expecting him to install such software is unduly burdensome and that Apple and HP should suffer sole responsibility: "Requiring those who want to avoid seeing pornography to have the burden to take steps to install filters is unreasonable."[24]

## III.    **DISCUSSION**

Mr. Sevier has asserted seven claimed causes of action against Apple and HP: (1) Fraudulent Misrepresentation;[25] (2) Products Liability;[26] (3) Res Ipsa Loquitur Relating to Personal Injury;[27] (4) Res Ipsa Loquitur Relating to Injury of Waste;[28] (5) Outrageous Conduct and Intentional Infliction of Emotional Distress;[29] (6) Tortious Interference;[30] and (7) Negligent Infliction of Emotional Distress.[31] Each count should be dismissed with prejudice.

---

[23]     [Doc. #28 ¶ 94].

[24]     [Doc. #28 ¶ 126]; see also [Doc. #28 ¶ 32] ["The burden should not be on those who want to see pornography to have to go through the troubles of figuring out how to install filtering software to avoid it. Not everyone has a computer science degree and can figure out how to install filtering software to filter."]; [Doc. #28 ¶ 121] [same].

[25]     [Doc. #28 ¶¶ 108-13].

[26]     [Doc. #28 ¶¶ 114-19].

[27]     [Doc. #28 ¶¶ 120-32].

[28]     [Doc. #28 ¶¶ 133-40].

[29]     [Doc. #28 ¶¶ 141-47].

## A.    Fraudulent Misrepresentation

In Count One, Mr. Sevier alleges generally that Apple and HP fraudulently misrepresented that the Apple and HP Computers were "safe."[32]  Without elaboration, Mr. Sevier asserts that (1) Apple and HP "intentionally misrepresented to [him] a material fact in regards to the dangers of [its] product[] in so far [sic] as [it] allowed him to come in contact with content on [the Apple and HP Computers] that damaged him" and (2) he "reasonably relied on the misrepresentation that the use of the [Apple and HP Computers] was safe" and, therefore, "continued his use of safari and suffered severe loss of enjoyment of life, loss of his capacity to earn a living, medical expenses, physical and mental pain and suffering."[33] These allegations are insufficient to state a claim under Tennessee law, and Count One should be dismissed with prejudice.

To state a claim for fraudulent misrepresentation, Mr. Sevier must plead the following with particularity[34] as well as plausibility: "(1) [Apple and HP] made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) [Mr. Sevier] reasonably relied on the misrepresented material fact; and (6) [Mr. Sevier] suffered damage as a result of the misrepresentation."[35]

---

[30]    [Doc. #28 ¶¶ 148-50].

[31]    [Doc. #28 ¶¶ 151-55].

[32]    [Doc. #28 ¶ 112].

[33]    [Doc. #28 ¶¶ 109-10].

[34]    FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

[35]    Hamilton County Emergency Comm'ns Dist. v. BellSouth Telecomms., LLC, 890 F. Supp. 2d 862, 878 (E.D. Tenn. 2012) (quoting Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008)).

6

Count One does not state a plausible claim. First, assuming that Apple and HP, in fact, described the computers Mr. Sevier purchased as "safe," that is a statement of opinion. Under Tennessee law, an opinion cannot be the basis for a misrepresentation claim.[36]

Further, Mr. Sevier alleges that he understood the unadorned statement that the Apple and HP Computers were "safe" to mean that they were incapable of accessing pornography.[37] Interpreting a general statement that the computers were "safe" as implying that they were "unable to access pornography" is patently unreasonable. No adult living in this country could reasonably believe that because a computer manufacturer described its products as "safe," that such a description meant that, when the internet was accessed from those products, pornography could not be retrieved. Using the factual details pleaded here, Mr. Sevier could not "reasonably" have believed that, because Apple and HP supposedly described their computers as "safe," he would be protected from pornography when accessing the internet, especially when he typed in sexually suggestive words like "fuckbook" into the web browser. Accordingly, Count One should be dismissed.

Although he labels his claim as one for misrepresentation, reading the First Amended Complaint as a whole, Mr. Sevier appears to be claiming that Apple and HP failed to warn him that

---

[36]    See, e.g., Sunderhaus v. Perel & Lowenstein, 388 S.W.2d 140, 142-43 (Tenn. 1965) (distinguishing between "fact" and "opinion" – the latter being inactionable for purposes of fraud); Dozier v. Hawthorne Dev. Co., 262 S.W.2d 705, 711 (Tenn. Ct. App. 1953) ("If affirmative and fraudulent expressions of opinion cannot amount to fraud or justify a rescission, then certainly a mere nondisclosure of a matter of an opinion cannot amount to fraud or justify relief.") (citation omitted).

[37]    [Doc. #28 ¶ 109] ["Apple and Hewlett Packard intentionally misrepresented to the Plaintiff a material fact in regards to the dangers of their products in so far [sic] as they allowed him to come in contact with content on their machines that damaged him."].

pornography was available on the internet.[38]  To sustain a claim for fraudulent concealment, Mr.

Sevier must "show that 'a party who has a duty to disclose a known fact or condition fail[ed] to do

so, and another party relie[d] upon the resulting misrepresentation, thereby suffering injury.'"[39]

Recast as a fraudulent concealment claim, Count One fails because Apple and HP owed no

duty to protect Mr. Sevier from his own addictive tendencies or, specifically, to warn him about

what, according to Mr. Sevier, "40,000,000 Americans" view on a "daily" basis.[40]  Emphasizing the

narrow scope of this claim, "Tennessee courts have generally found that a duty to disclose

information can arise under three circumstances: '(1) where there is a previous definite fiduciary

relation between the parties, (2) where it appears one or each of the parties to the contract expressly

reposes a trust and confidence in the other, and (3) where the contract or transaction is intrinsically

fiduciary and calls for perfect good faith.'"[41]  There are no allegations in the First Amended

Complaint that even remotely suggest that Apple and HP owed fiduciary obligations to Mr. Sevier.

Absent a duty to disclose, there can be no claim for fraudulent concealment.[42]

---

[38]      [Doc. #28 ¶ 113] ["Apple and Hewlett Packard were aware of the abundance of obscene
pornography that could be access[ed] through the normal use of their devices. Yet, neither Apple
nor HP did anything to prevent the Plaintiff from coming in contact with the damaging content."].

[39]      Hamilton County, 890 F. Supp. 2d at 879 (quoting Chrisman v. Hill Home Dev., Inc., 978
S.W.2d 535, 538-39 (Tenn. 1998)).

[40]      [Doc. #28 ¶ 22].

[41]      Hamilton County, 890 F. Supp. 2d at 879 (quoting GuestHouse Int'l, LLC v. Shoney's N.
Am. Corp., 330 S.W.3d 166, 195 (Tenn. Ct. App. 2010)).

[42]      Ooltewah Mfg. Inc. v. Country Coach, Inc., No. 05-221, 2005 WL 2671126, at *5 (E.D.
Tenn. Oct. 18, 2005) ("Plaintiff has failed to plead with particularity its claim for fraudulent
concealment.  Although Plaintiff alleged Defendant knew of the engine mounting frames defect in
the motorcoach and then concealed this fact from purchasers of the motorcoaches, Plaintiff does not
allege or implicitly allege Defendant had a duty to disclose the alteration in the engine mounting
frames. Nowhere has Plaintiff alleged the parties were in a confidential relationship or the
transaction was intrinsically fiduciary.  Further, Plaintiff does not claim the engine mounting frames
defect could not be discovered through ordinary diligence. In addition, Plaintiff does not state the
failure to disclose was material.  In sum, Plaintiff did not plead with particularity his averment of

8

Mr. Sevier's fraud claim, whether for misrepresentation or concealment, is implausible on its face. One cannot be held liable for selling computers that connect to the internet, whether or not they were described as "safe." At bottom, that is the sum and substance of Mr. Sevier's claims.

Even setting aside the implausibility of Count One, Count One does not meet the basic pleading requirements imposed by Federal Rule of Civil Procedure 9(b). To satisfy the rule, Mr. Sevier must "allege the time, place, and content of the alleged misrepresentation on which he . . . relied; the fraudulent scheme; the fraudulent intent of the defendant[]; and the injury resulting from the fraud."[43] He has not done so. Instead, he has generically alleged that Apple and HP – at an unspecified time, through unspecified means, through unidentified representations, through unidentified representatives, and at an unspecified place – represented to him that the Apple and HP Computers were "safe," which does not meet the requirements under Rule 9(b).[44] Mr. Sevier's allegations are deficient under the rule such that the fraud claim should be dismissed.[45]

---

fraudulent concealment. Accordingly, the Court will DISMISS Plaintiff's claim for fraudulent concealment.").

[43]    Coffey v. Foamex L.P., 2 F.3d 157, 161-62 (6th Cir. 1993).

[44]    Hagen v. U-Haul Co. of Tenn., 613 F. Supp. 2d 986, 996 (W.D. Tenn. 2009) ("The complaint lacks any indication as to the time or place in which the fraudulent representations were made. . . . Similarly, the form of the misrepresentations remains unclear: Were they made as an advertisement, a statement by a salesperson, a warranty in the rental contract, etc.? Also, aside from generally stating that the fraud involved the 'safety' of the product, the complaint does not expound upon the content of the misrepresentations. The topic of safety could encompass a wide range of explicit and implicit assertions. . . . In its present form, the Plaintiffs' complaint is simply too vague as to the 'who, what, where, and when' of the fraud to meet the particularity requirement. Thus, the Plaintiffs' fraud claims must be dismissed for failure to comply with Fed.R.Civ.P. 9(b).") (emphasis added).

[45]    See, e.g., Evans v. Pearson Enters., Inc., 434 F.3d 839, 852-53 (6th Cir. 2006) (affirming the dismissal of the plaintiff's fraud claim where the plaintiff failed to plead fraud with the particularity required by Rule 9(b)).

9

**B.    Products Liability and Res Ipsa Loquitur Relating to Personal Injury**

In Counts Two and Three, Mr. Sevier argues that Apple and HP are strictly liable and, under the heading of "Res Ipsa Loquitur,"[46] negligent for selling the Apple and HP Computers without a pre-installed pornography filter.[47]  Although Mr. Sevier "has filed several claims against [Apple and HP], each is covered by the Tennessee Product Liability Act" ("TPLA").[48]  Under the TPLA, Mr. Sevier must plead that the Apple and HP Computers, as manufactured and sold, were "in a defective condition or unreasonably dangerous."[49]  Specifically, Mr. Sevier must plead with plausibility that "(1) the [Apple and HP Computers] w[ere] defective and/or unreasonably dangerous, (2) the defect existed at the time the [Apple and HP Computers] left the manufacturer's control, and (3) [his] injury was proximately caused by the [Apple and HP Computers]."[50]

Mr. Sevier has not alleged that the Apple and HP Computers contained a plausible defect. Although Mr. Sevier has identified a barrage of purported injuries – including, for example, "psychological[] harm[]," "addicti[on]," and "a decrease[d] quality of life" – injury alone is

---

[46]    It is well-settled under Tennessee law, however, that "the doctrine of res ipsa loquitur is not a substitute for proof of defect" in a products liability case.  Fulton v. Pfizer Hosp. Prods. Group, Inc., 872 S.W.2d 908, 912 (Tenn. Ct. App. 1993) (citing Harwell v. Am. Med. Sys., Inc., 803 F. Supp. 1287, 1298 (M.D. Tenn. 1992)).

[47]    [Doc. #28 ¶¶ 114-32].

[48]    Maness v. Boston Scientific, 751 F. Supp. 2d 962, 967 (E.D. Tenn. 2010); see also Browder v. Pettigrew, 541 S.W.2d 402, 404 (Tenn. 1976) ("[I]n a products liability action in which recovery is sought under the theory of negligence, the plaintiff must establish the existence of a defect in the product just as he does in an action where recovery is sought under the strict liability theory or for breach of warranty, either express or implied.").

[49]    TENN. CODE ANN. § 29-28-105(a) ("A manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.").

[50]    Sigler v. Am. Honda Motor Corp., 532 F.3d 469, 483 (6th Cir. 2008) (citing King v. Danek Med., Inc., 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000)).

insufficient to state a claim for relief.[51]  Instead, "the issue is whether the alleged defective design or manufacturing of the [Apple and HP Computers] caused [Mr. Sevier] pain."[52]  Whether the claim is that the Apple and HP Computers were "unreasonably dangerous"[53] or were in a "defective condition,"[54] those claims collapse into a single inquiry: Has the plaintiff "show[n] that there is something wrong with the product"?[55]

To answer that question, Mr. Sevier asserts that the Apple and HP Computers should have included a pre-installed pornography filter.[56]  But Mr. Sevier does not contend that the Apple and HP Computers failed to operate as expected – in fact, they did by affording him with internet access.  He contends only that Apple and HP, in his opinion, could have improved the product.[57]

---

[51]    King, 37 S.W.3d at 435 ("In a product liability claim, the fact that a plaintiff is injured is not proof of a defect in the product.").

[52]    Maness, 751 F. Supp. 2d at 970 (citing Browder, 541 S.W.2d at 404).

[53]    A product is "unreasonably dangerous" when it "is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition."  TENN. CODE ANN. § 29-28-102(8).

[54]    A "defective condition" is "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption."  TENN. CODE ANN. § 29-28-102(2).

[55]    Fulton, 872 S.W.2d at 911 (quoting Tatum v. Cordis Corp., 758 F. Supp. 457, 461 (M.D. Tenn. 1991)).

[56]    [Doc. #28 ¶ 118] ["The devices were in an unsafe condition without having installed filtering porn software or control settings that block porn at the time it left the manufacturing plant."]; [Doc. #28 ¶ 129] ["The defendants knew that it would be an easy and inexpensive fix for them to sell their products on safe mode, which would filter out illicit pornographic content."].

[57]    In that regard, this case is an outlier and unlike the prototypical products liability case against a software provider where a plaintiff claims that the software failed to operate as expected.  See, e.g., Graves v. CAS Med. Sys., Inc., 735 S.E.2d 650, 652-53 (S.C. 2012) (analyzing product liability claim against a software provider based on the software's failure to trigger an alarm as an infant's heart rate dropped and eventually stopped); Peavey Elecs. Corp. v. Baan USA, Inc., 10 So. 3d 945, 949-50 (Miss. App. 2009) (analyzing product liability claim that software failed to operate

11

"[I]t is well-established in Tennessee," however, "that such a possibility of an alternative design is completely insufficient to find a product 'defective.'"[58]  Thus, just as the Eastern District of Tennessee in Hayes v. Spectorsoft Corp. dismissed a products liability claim against a software provider because, at best, the plaintiff produced evidence only of "measures [the defendant] could have taken" to allegedly improve software and admittedly to avoid the plaintiff's injuries,[59] this Court should dismiss Counts Two and Three with prejudice because Mr. Sevier has failed to plead a plausible defect.

## C.   Res Ipsa Loquitur Relating to Injury of Waste

In Count Four, Mr. Sevier argues that Apple and HP have caused unspecified taxes to be wasted because, in the absence of pre-installed pornography filters, he believes that there is an increase in crime associated with "sex trafficking, child pornography, and other forms of criminal sexual misconduct."[60]  Under this theory, "[w]asting tax pay[er] dollars is an injury to tax payers, like [Mr. Sevier]," and according to Mr. Sevier, he "has been directly injured by [Apple's and HP's]

---

"out of the box"); Henry Scien, Inc. v. Strombe, 102 S.W.3d 675, 679 (Tex. 2002) (analyzing class allegations that software failed to operate as expected).

[58]   Alexander v. Antonio Zamperla, S.p.A., No. E2009-01049-COA-R3-CV, 2010 WL 3385141, at *6 (Tenn. Ct. App. Aug. 27, 2010) (citing Curtis v. Univ. Match Corp., 778 F. Supp. 1421, 1430 (E.D. Tenn. 1991)) (emphasis added); see also Shoemake v. Omniquip Int'l, Inc., 152 S.W.3d 567, 573 (Tenn. Ct. App. 2004) ("A departure from the required standard of care is not demonstrated by simply showing that there was a better, safer, or different design which might have avoided the injury.  A manufacturer is not required to incorporate the ultimate safety features in a product.  The manufacturer is not an insurer of its product.  It is not required to design a perfect or accident-proof product.") (citations omitted).

[59]   Hayes v. Spectorsoft Corp., No. 08-187, 2009 WL 3713284, at *11 (E.D. Tenn. Nov. 3, 2009) ("Plaintiff's expert opines that SpectorSoft's software is both 'defective' and 'unreasonably dangerous.'  He suggests that there are measures SpectorSoft could have taken to ensure that its software is not mishandled, such as alerting users to monitoring.  However, this is not enough to trigger liability for a defective product under Tennessee law.") (citing Shoemake, 152 S.W.3d at 573).

[60]   [Doc. #28 ¶ 138].

12

breach of [their] duty in this regard and has standing under this claim as a taxpayer."[61]  Count Four should be dismissed with prejudice because (1) it fails to state a plausible claim for relief and (2) Mr. Sevier lacks standing to seek this sort of relief.

First, res ipsa loquitur is not a standalone claim; therefore, Count Four should be dismissed. As the Tennessee Court of Appeals has noted, "[r]es ipsa loquitur is a rule of evidence, <u>not a rule of law</u>," and "[i]t is intended to come to the aid of plaintiffs who have no direct evidence of a defendant's negligence, by providing a specialized vehicle for considering circumstantial evidence in negligence cases."[62]  Nevertheless, before Mr. Sevier may even invoke res ipsa loquitur, he "must demonstrate that he . . . was injured by an instrumentality that was in [Apple's and HP's] exclusive control."[63]  Here, after Mr. Sevier purchased the Apple and HP Computers, they were no longer under the "exclusive control" of Apple or HP, and res ipsa loquitur cannot supply an inference of negligence when, as here, Mr. Sevier "exclusive[ly] control[led]" the Apple and HP Computers.[64]

Second, even assuming that res ipsa loquitur is a standalone claim – which it is not – Mr. Sevier's taxpayer status does not establish standing under Article III.  As the Supreme Court has explained, "[t]he irreducible constitutional minimum of standing contains three requirements: [1]

---

[61]     [Doc. #28 ¶ 140].

[62]     <u>Burton v. Warren Farmers Co-op</u>, 129 S.W.3d 513, 525-26 (Tenn. Ct. App. 2002) (quoting <u>Seavers v. Methodist Med. Ctr.</u>, 9 S.W.3d 86, 91 (Tenn. 1999)) (emphasis added).

[63]     <u>Seavers</u>, 9 S.W.3d at 19; <u>see also</u> <u>Towle v. Phillips</u>, 172 S.W.2d 806, 808 (Tenn. 1943) ("One essential for the application of res ipsa loquitur is that the instrumentality or thing which caused the accident must have been under the sole control, the exclusive management, of the defendant. Such was not the case here. This airplane had dual controls, one before each seat, and it could be operated with either set of controls. It is not shown that the controls in front of the passenger were disconnected. So it is plain that the course of the machine might have been directed by Towle as well as by Webb. Webb did not have exclusive control and the rule relied on is not to be invoked against him.").

[64]     <u>See, e.g.</u>, <u>Towle</u>, 172 S.W.2d at 808 (holding that res ipsa loquitur was inapplicable when, as in this case, the plaintiff could have been operating the allegedly defective device at the time of the injury).

injury in fact, [2] causation, and [3] redressability."[65]  None of those conditions is satisfied.  In fact, the Sixth Circuit has expressly rejected a "tax burden" as an injury capable of judicial redress.

In Coyne v. American Tobacco Co., two plaintiffs sued various tobacco manufacturers, wholesalers, and retailers because the defendants' products allegedly had caused the State of Ohio to unnecessarily expend taxpayer funds for the healthcare of its citizens.[66]  The district court dismissed the lawsuit after "conclud[ing] that plaintiffs lacked standing to sue on the basis of their alleged 'tax burden' injury,"[67] and the Sixth Circuit affirmed because "a plaintiff's claim must be more than a 'generalized grievance' that is pervasively shared by a large class of citizens."[68]  Applying that standard to the Coyne plaintiffs, the Sixth Circuit readily concluded that, "under settled law," the plaintiffs lacked standing because they "have not suffered an injury that is distinct from the injury shared by all Ohio taxpayers and public employees."[69]

Likewise, Mr. Sevier is attempting to seek recovery for injuries to third parties and to the public treasury as a result of criminal investigations and prosecutions ostensibly resulting from

---

[65]  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-03 (1998).

[66]  Coyne v. Am. Tobacco Co., 183 F.3d 488, 491 (6th Cir. 1999).

[67]  Id.

[68]  Id. 494 (citing Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 474-75 (1982)).

[69]  Id. at 494-95 ("Article III requires that a plaintiff show that he personally has suffered some actual or threatened injury as a result of the allegedly illegal conduct of the defendant. Here, Plaintiffs have not suffered a legally cognizable injury sufficient to confer standing. Although Plaintiffs contend that they have a 'special interest' in state funds, and thus bear a 'tax burden,' Plaintiffs have not suffered an injury that is distinct from the injury shared by all Ohio taxpayers and public employees.  Furthermore, Plaintiffs do not allege facts to distinguish themselves from all other Ohio taxpayers. Indeed, Plaintiffs' injury is not direct or particularized to Plaintiffs, as they seek damages not for any personal injuries, but rather for the injury to others – individual smokers and the State of Ohio.  Significantly, the Supreme Court has recognized that a plaintiff who complains of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts is generally said to stand at too remote a distance to recover.  Thus, under settled law, the alleged 'tax burden' injury is not an injury in fact sufficient to confer standing.").

Apple and HP's failure to shield customers from internet pornography.[70]  Even crediting that

dubious causal chain, considering Coyne, Mr. Sevier has failed to allege a cognizable injury under

Article III of the Constitution, which deprives this Court of jurisdiction over Count Four.

Furthermore, Mr. Sevier's claim utterly ignores the requirement of redressability, as the

relief sought will not prevent taxpayers, including Mr. Sevier, from gaining unrestricted access to

pornography on the internet.  The fundamental principle of redressability requires "that prospective

relief will remove the harm," and the plaintiff must show "that he personally would benefit in a

tangible way from the court's intervention."[71]  On this point, Coyne similarly establishes that Mr.

Sevier's claim fails because a victory in this lawsuit would not redress the purported "waste" of

taxpayer funds – even accepting the doubtful premise that the supposed "waste" is a result of Apple

and HP's failure to install pornography filters on Apple and HP Computers.[72]

For these reasons, this Court is without jurisdiction to consider Count Four, such that it

should be dismissed.

**D.     Outrageous Conduct and Intentional Infliction of Emotional Distress**

In Count Five, numbered as Count Four in the First Amended Complaint, Mr. Sevier claims

that Apple and HP committed intentional infliction of emotional distress ("IIED").  Because Mr.

---

[70]      [Doc. #28 ¶¶ 138-39].

[71]      Warth v. Seldin, 422 U.S. 490, 505, 508 (1975).

[72]      Coyne, 183 F.3d at 496 ("Plaintiffs' complaint suggests no likelihood that victory in this suit
would result in either their receipt of a tax refund or a reduction in the tax bill for Ohio citizens
generally. Reimbursement of the public treasury would not necessarily redress Plaintiffs' claimed
'tax burden' injury because even if Plaintiffs secured a favorable judgment, the power to decrease
state taxes or issue a tax refund rests within the province of the legislative and executive branches of
the State of Ohio. As the district court correctly pointed out, it is the state's decision to determine
how to utilize a recovery of state funds. Plaintiffs' injuries are not 'redressable,' as Plaintiffs cannot
establish that a favorable court decision is likely to remedy the alleged violation.").

15

Sevier has not pleaded factual allegations establishing that Apple and HP committed "outrageous" conduct, Count Five should be dismissed with prejudice.

Under Tennessee law, "to establish a prima facie case of [IIED]," Mr. Sevier must plead the following with plausibility: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct must result in serious mental injury to the plaintiff."[73]

As to the second element, liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[74] Accordingly, Tennessee courts limit claims to those "in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'."[75]

On that account, the Tennessee Supreme Court has recognized that "[t]he outrageous conduct requirement is a high standard which has consistently been regarded as a significant limitation on recovery"[76] and "which provides the primary safeguard against fraudulent and trivial claims."[77] And, to be certain, "it is the court's duty in the first instance to apply that standard and determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."[78]

---

[73]    Miller v. Wilbanks, 8 S.W.3d 607, 612 (Tenn. 1999) (citing Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997)).

[74]    Bain, 936 S.W.2d at 623.

[75]    Id.

[76]    Doe 1 ex rel. Doe v. Roman Catholic Diocese, 154 S.W.3d 22, 39 (Tenn. 2005).

[77]    Id. (quoting Miller, 8 S.W.3d at 614).

[78]    Bain, 936 S.W.2d at 622 (quoting Medlin v. Allied Inv. Co., 398 S.W.2d 270, 274 (1966)).

For example, Tennessee's appellate courts have rejected IIED claims predicated on admittedly illegal discrimination,[79] the commission of judicial perjury in connection with an adulterous affair,[80] a landlord's failure to take remedial action as to his tenants' illegal drug trafficking operation occurring at his rental property,[81] and false and publically-made accusations concerning a couple's "sexual improprieties, public drunkenness, public nudity, and allegations accusing one of [them] of statutory rape of a former student."[82]  There are no cases where a Tennessee court has permitted an IIED claim to proceed against a defendant on facts analogous to those asserted by Mr. Sever against Apple and HP – that is, for selling a device capable of connecting to the internet without restriction.

Applying the "high standard" of outrageousness to Count Five, this Court should dismiss the claim.  Mr. Sevier's allegations fail to show that selling the Apple and HP Computers, without pre-installed pornography filters, was "so outrageous that it is not tolerated by civilized society."  Indeed, civilized society has been purchasing computers with unrestricted access to the internet since the availability of the technology.  Unrestricted internet access is a standard feature on computers sold today, as Mr. Sevier repeatedly acknowledges.[83]  Mr. Sevier's allegations do not begin to satisfy the heavy burden of "outrageousness" under Tennessee law.

---

[79]  Arnett v. Domino's Pizza I, L.L.C., 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003).

[80]  Alexander v. Inman, 825 S.W.2d 102, 104 (Tenn. Ct. App. 1991).

[81]  Riley v. Whybrew, 185 S.W.3d 393, 399 (Tenn. Ct. App. 2005).

[82]  Lane v. Becker, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010).

[83]  [Doc. #28 ¶ 22-23, 27-28].

**E.     Tortious Interference**

In Count Six, Mr. Sevier claims that Apple and HP caused his marriage's dissolution and, therefore, seeks redress under a tortious-interference-with-a-contract theory.[84]  Because Mr. Sevier is attempting to repackage a long-since-repudiated tort – alienation of affection – Count Six should be dismissed with prejudice.

Before 1989, as an alienation-of-affection claim, aggrieved spouses could sue third-parties for interfering with and causing the dissolution of their marriage.  To state a claim, a plaintiff was required to show – just as Mr. Sevier is attempting to plead in this case – that the defendant "willful[ly] and malicious[ly] interfere[d] with the marriage relation without justification or excuse."[85]  In 1989, however, the Tennessee Legislature abolished that claim,[86] and in 1991, the Tennessee Supreme Court echoed that sentiment: "Because we find that the reasons for the cause of action no longer exist, and because the public policy of the state, as expressed by the Legislature, is offended by alienation of affections actions, we hold that the common-law tort of alienation of affections is hereby abolished."[87]

Tennessee's appellate courts have not recognized an intentional-interference-with-a-contract claim in the marital context, nor have they addressed whether a plaintiff may camouflage an

---

[84]      [Doc. #28 ¶¶ 148-50].

[85]      McMullen v. McMullen, 778 S.W.2d 859, 860 (Tenn. Ct. App. 1989) (Donnell v. Donnell, 415 S.W.2d 127, 132 (Tenn. 1967)).

[86]      Dupuis v. Hand, 814 S.W.2d 340, 342-43 (Tenn. 1991); see also TENN. CODE ANN. § 36-3-701 ("The common law tort of alienation of affection is hereby abolished.").

[87]      Dupuis, 814 S.W.2d at 346; see also Hoye v. Hoye, 824 S.W.2d 422, 426-27 (Ky. 1992) ("To posit that one person possesses rights to the feelings of another is an anachronism. Yet this is the foundation for tortious interference with the marital relation where the presence of a third party is blamed for changes in the marriage. . . . We therefore rule to abolish the action known as tortious interference with the marital relation, relying on the premise that affection between spouses cannot be owned, i.e., that the underlying assumption of the tort is an anachronism.").

alienation-of-affection claim as an intentional-interference-with-a-contract claim in order to withstand a motion to dismiss. Litigants in other jurisdictions, however, have attempted exactly this strategy, which has been consistently rejected. For example, as the South Dakota Supreme Court explained, "[t]hose courts held the actions alleging tortious interference with a marital contract were really actions for alienation of affections, a tort which had been abolished in their respective jurisdictions," and on that account, "[t]he courts refused to allow these attempts to circumvent the judicially or legislatively abolished causes of action by disguising the suits as other types of torts."[88] For the same reason and consistent with Tennessee's policy against alienation-of-affection claims, Count Six – and any claim in this case that Apple or HP interfered with Mr. Sevier's marriage – should be dismissed because (1) Tennessee has abolished an alienation-of-affection claim and (2) Mr. Sevier is attempting to avoid that abolition by simply masking his claim as one for intentional interference with a contract.

### F.     Negligent Infliction of Emotional Distress

Finally, Mr. Sevier alleges in Count Seven that Apple and HP are liable for negligent infliction of emotional distress. According to Mr. Sevier, Apple and HP negligently inflicted emotional distress by breaching a duty of care and "selling him a device that was not set on 'safe mode,' and by negligently, accidentally or recklessly failing to provide [him] with notice of the

---

[88]     Pickering v. Pickering, 434 N.W.2d 758, 762 (S.D. 1989) (collecting cases); see also Weizmann v. Kirkland & Ellis, 732 F. Supp. 1540, 1545 (D. Colo. 1990) ("Based upon my review of the complaint, I conclude that Weizmann's second claim for relief, alleging negligent interference with the marital relationship, and Weizmann's third claim for relief, denominated intentional interference with contractual relations mask a claim for alienation of affections, and must be dismissed."); Weaver v. Union Carbide Corp., 378 S.E.2d 105, 109 (W.Va. 1989) ("We must look to the substance of the plaintiff's complaint and not merely to its form. It is clear that the plaintiff seeks only damages that relate to the impairment of her marriage and to her eventual divorce. . . . To allow her suit would also run counter to the policies underlying the legislative abolition of suits for alienation of affections. . . . The claim for intentional interference with the marital relationship is, in its essence, one for alienation of affections and is barred by [the legislative abolition of alienation-of-affection claims].").

19

dangers of pornography that was accessible through the device."[89]   Count Seven should be dismissed with prejudice because Apple and HP owed no such duty to Mr. Sevier.

Under Tennessee law, a negligent-infliction-of-emotional-distress claim requires a plaintiff to plead "the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation," and "[i]n addition, the plaintiff must prove that the defendant's conduct caused a serious or severe emotional injury."[90]   As to the "serious or severe emotional injury," there can be recovery only for those consequences with which "a reasonable person, normally constituted, would be unable to adequately cope."[91]

Even assuming that Mr. Sevier successfully pleaded causation and the level of injury required under Tennessee law − which he did not − Count Seven fails because there is no legal duty to sell a computer in "safe mode," nor is there a duty for a commercial vendor to educate a consumer about the putative dangers of pornography.  This Court can reach that conclusion without any need for an evidentiary record because whether a duty is cognizable "is a question of law to be determined by the court."[92]

Here, there are no cases comparable to the novel theories floated by Mr. Sevier.  Further, the absence of "controlling or even persuasive case law that would impute an affirmative duty on [Apple or HP] to provide assistance to its customers" in the manner pitched by Mr. Sevier strongly weighs in favor of finding that Apple and HP owed no duty here.[93]   But even in the absence of "controlling or even persuasive case law," this Court should apply the well-settled principle that

---

[89]      [Doc. #28 ¶ 153].

[90]      Rogers v. Louisville Land Co., 367 S.W.3d 196, 206 (Tenn. 2012).

[91]      Id. at 208 (quoting Camper v. Minor, 915 S.W.2d 437, 446 (Tenn. 1996)).

[92]      McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995).

[93]      Riddle v. Lowe's Home Ctrs., Inc., 802 F. Supp. 2d 900, 905 (M.D. Tenn. 2011).

defendants, such as Apple and HP, do not "have a duty to act affirmatively to protect others from conduct <u>other than their own</u>."[94]  In other words, "as a general rule in Tennessee, [defendants] do not have a duty to control the conduct of other persons to prevent them from causing physical harm to [plaintiffs]."[95]  That rule applies equally even when third parties, such as internet content providers, are engaging in or otherwise facilitating criminal activity, as Mr. Sevier claims.[96]

Applying that standard here, Apple and HP had no duty to protect Mr. Sevier from the purportedly injurious effects resulting from his access to third-party content.  Nowhere in the First Amended Complaint has Mr. Sevier alleged that Apple or HP published or otherwise exercised any editorial control over the third-party pornography because, of course, they did not.  There is no basis in law from which to conclude that Apple and HP had a duty to sell the Apple and HP Computers in "safe mode," as Mr. Sevier claims, nor is there any basis from which to conclude that Apple and HP were obligated to educate Mr. Sevier about the purportedly addictive nature of pornography.  Put simply, contrary to Mr. Sevier's suggestion, there is no common law duty to "protect[] us from ourselves."[97]  Apple and HP, therefore, owed no duty to protect Mr. Sevier from himself or from the allegedly dangerous content created by third parties, and this Court should dismiss Count Seven with prejudice.

---

[94]    <u>Ham v. Hosp. of Morristown, Inc.</u>, 917 F. Supp. 531, 534 (E.D. Tenn. 1995) (citing <u>Nichols v. Atnip</u>, 844 S.W.2d 655, 661 (Tenn. Ct. App. 1992)) (emphasis added).

[95]    <u>Id.</u> (citing <u>Nichols</u>, 844 S.W.2d at 661).

[96]    <u>See, e.g.</u>, <u>Giggers v. Memphis Housing Auth.</u>, 277 S.W.3d 359, 364 (Tenn. 2009) ("At common law, a private person or corporation, as distinguished from governmental units, had no duty whatsoever to protect others from the criminal acts of third parties.") (quoting <u>Cornpropst v. Sloan</u>, 528 S.W.2d 188, 191 (Tenn. 1975)).

[97]    [Doc. #28 ¶ 7].

IV.     **CONCLUSION**

For these reasons, Apple and HP respectfully request that this Court dismiss with prejudice all counts in the First Amended Complaint.

Respectfully Submitted,

Dated: <u>Wednesday, January 15, 2014</u>

*/s/ Sara A. Ford*
One of the Attorneys for Apple and HP

OF COUNSEL:
Sara A. Ford (admitted pro hac vice)
*sford@lightfootlaw.com*
Jeffrey P. Doss (admitted pro hac vice)
*jdoss@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone:      (205) 581-0700
Facsimile:      (205) 581-0799

Thomas A. Wiseman III, #11738
*tom@wisemanashworth.com*
WISEMAN ASHWORTH LAW GROUP PLC
511 Union Street, Suite 800
Nashville, Tennessee 37219
Telephone:      (615) 254-1877
Facsimile:      (615) 254-1878

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on the following through this Court's electronic filing system on this 15th day of January, 2014:

Chris Sevier
Unit 247
9 Music Square South
Nashville, Tennessee 37203

*/s/ Sara A. Ford*
OF COUNSEL