# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

CHRIS SEVIER,                     }

                             }

       **Plaintiff,**         }

                             }

**v.**                           }   **Case No.: 3:13-CV-607**

                             }

**APPLE INC., et al.,**        }   **District Judge Todd J. Campbell**

                           }   **Magistrate Judge E. Clifton Knowles**

       **Defendants.**     }

## APPLE INC. AND HEWLETT-PACKARD COMPANY'S OPPOSITION TO THE MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Sara A. Ford (admitted pro hac vice)
*sford@lightfootlaw.com*
Jeffrey P. Doss (admitted pro hac vice)
*jdoss@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone:    (205) 581-0700
Facsimile:    (205) 581-0799

Thomas A. Wiseman III, #11738
*tom@wisemanashworth.com*
WISEMAN ASHWORTH LAW GROUP PLC
511 Union Street, Suite 800
Nashville, Tennessee 37219
Telephone:    (615) 254-1877
Facsimile:    (615) 254-1878

# TABLE OF CONTENTS

I.     **Procedural Posture and Standard of Review** ....................................................2

II.    **Summary of Claims** ........................................................................................3

III.    **Discussion**........................................................................................................5

    A.    The original counts – numbered in the proposed Second Amended Complaint as Counts One, Two, Three, Four, Seven, Eight, Nine, Ten, Eleven, and Twelve – fail to state plausible claims for relief, and the Motion for Leave to Amend should be denied as to those counts.......................................................................5

        1.    Mr. Sevier's accusation that Apple and HP have a supposed "agency relationship" with "pornography predators" is without any basis and should be disregarded when determining whether to grant or deny the Motion for Leave to Amend. ......................................................5

        2.    Count One: Fraud.......................................................................7

        3.    Counts Two, Three, Four, and Seven: Products Liability, Strict Liability, Negligence, and Res Ipsa Loquitur Relating to Personal Injury...............12

        4.    Count Eight: Res Ipsa Loquitur Relating to Injury of Waste....................15

        5.    Counts Nine and Twelve: Intentional Infliction of Emotional Distress and Outrage...................................................................................19

        6.    Count Ten: Tortious Interference.............................................................21

        7.    Count Eleven: Negligent Infliction of Emotional Distress .......................23

    B.    The new counts – numbered in the proposed Second Amended Complaint as Counts Five, Six, Thirteen, Fourteen, Fifteen, Sixteen, and Twenty Two – fail to state plausible claims for relief, and the Motion for Leave to Amend should be denied as to those counts.......................................................................26

        1.    Count Five: Breach of Implied Warranty ..................................................26

        2.    Count Six: Unfair and Deceptive Trade Practices ....................................28

        3.    Count Thirteen: Civil Conspiracy.............................................................29

        4.    Count Fourteen: Breach of the Duty of Good Faith and Fair Dealing.......31

        5.    Count Fifteen: Violation of the Lanham Act for False Advertising ..........33

6.      Count Sixteen: False Advertising .............................................................34

7.      Count Twenty Two: Negligent Misrepresentation ...................................35

**IV.    Conclusion** ...........................................................................................................**37**

**Certificate of Service**............................................................................................**38**

## APPLE INC. AND HEWLETT-PACKARD COMPANY'S
## OPPOSITION TO THE MOTION FOR LEAVE TO FILE
## A SECOND AMENDED COMPLAINT

Defendants Apple Inc. ("Apple") and Hewlett-Packard Company ("HP") oppose Plaintiff Chris Sevier's motion for leave to file a second amended complaint,[1] filed on January 21, 2014, and respectfully request that this Court deny the motion as futile.

On January 15, 2014, Apple and HP filed their Motion to Dismiss as well as the supporting memorandum. As detailed in the memorandum, the First Amended Complaint should be dismissed for failure to state a plausible claim for relief under Tennessee law. To date, Mr. Sevier has not responded with any argument or authority to the contrary.[2]

Instead, on January 21, 2014, rather than oppose the Motion to Dismiss, Mr. Sevier filed the proposed Second Amended Complaint. The proposed Second Amended Complaint contains over 300 pages and over 400 separately-numbered paragraphs. At a minimum, the proposed Second Amended Complaint defies Federal Rule of Civil Procedure 8(a)(2), which requires "[a] pleading that states a claim for relief [to] contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."[3]

But, more importantly, all of Mr. Sevier's claims distill to a single question: Should Apple and HP be held civilly liable for selling computers that permitted Mr. Sevier – an adult – to connect to the internet without restriction? As a legal matter, the answer to that question is "No." Notwithstanding its length, the proposed Second Amended Complaint fails to include any plausible claims for relief, and the Motion for Leave to Amend should be denied.

---

[1]     [Doc. #63].

[2]     Mr. Sevier's newly-filed opposition, [Doc. #71], contains neither argument nor authority.

[3]     FED. R. CIV. P. 8(a)(2) (emphasis added).

1

# I.    PROCEDURAL POSTURE AND STANDARD OF REVIEW

Because Mr. Sevier has already amended the Complaint once and neither Apple nor HP

consents to a second amendment, Mr. Sevier cannot amend the Complaint again without this

Court's permission.[4]  Although the Court "should freely give leave when justice so requires,"[5] a

motion for leave to amend should be denied "where the amendment would be futile."[6]

"Amendment of a complaint is futile when the proposed amendment would not permit the

complaint to survive a motion to dismiss."[7]  And, "[t]o survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[4]    FED. R. CIV. P. 15(a)(1)-(2) ("A party may amend its pleading <u>once</u> as a matter of course . . . . <u>In all other cases</u>, a party may amend its pleading only with the opposing party's written consent or the court's leave.") (emphasis added); <u>see also</u> <u>Haynes v. Navy Fed. Credit Union</u>, 282 F.R.D. 17, 19 (D.D.C. 2012) (citing FED. R. CIV. P. 15(a)(2)) ("When a party seeks to amend his pleadings . . . <u>for a second time</u>, he may do so only with the opposing party's written consent or the district court's leave.") (emphasis added); <u>Kuria v. Palisades Acquisition XVI, LLC</u>, 752 F. Supp. 2d 1293, 1297 (N.D. Ga. 2010) (noting that a plaintiff does not "have free reign under Rule 15(a)(1) to file a second amendment to the complaint as a matter of course" even if, as here, the defendant has filed a motion to dismiss the first amended complaint because doing so "<u>would require the Court to view the first amended complaint, instead of the original complaint, as the first pleading in this case</u>").
    Should the Court determine that Mr. Sevier is entitled to amend the First Amended Complaint without leave, Apple and HP request that the Court construe this Opposition as a Motion to Dismiss the Second Amended Complaint and supporting memorandum because, as described above, the standard for futility is identical to the standard of review under Rule 12(b)(6).

[5]    FED. R. CIV. P. 15(a)(2).

[6]    <u>Yuhasz v. Brush Wellman, Inc.</u>, 341 F.3d 559, 569 (6th Cir. 2003) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

[7]    <u>Miller v. Calhoun County</u>, 408 F.3d 803, 818 (6th Cir. 2005) (citing <u>Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.</u>, 632 F.2d 21, 23 (6th Cir. 1980)); <u>see also</u> <u>Rose v. Hartford Underwriters Ins. Co.</u>, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.") (citing <u>Thiokol Corp. v. Dep't of Treas.</u>, 987 F.2d 376, 382-83 (6th Cir. 1993)); <u>Grissom v. City of Sandusky</u>, No. 12-2504, 2013 WL 3581119, at *4 (N.D. Ohio July 11, 2013) ("In reviewing the proposed amended complaint, I find it fails to contain allegations necessary to survive a Rule 12(b)(6) challenge. . . . These gaps, under the teachings of <u>Iqbal</u> and <u>Twombly</u>, are insufficient to sustain a challenge as a matter of law and the proposed amended complaint is futile.").

2

on its face,'"[8] but "a legal conclusion couched as a factual allegation" need not be accepted as true.[9] Instead, a complaint "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."[10] Thus, "[t]his standard demands that the factual allegations 'raise a right to relief above the speculative level' and 'nudge[] the[] claims across the line from conceivable to plausible.'"[11] "In the final analysis, '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"[12]

## II.   SUMMARY OF CLAIMS

In the proposed Second Amended Complaint, Mr. Sevier has expressed his intention to add three new defendants – (1) Eric Holder, in his official capacity as Attorney General; (2) Mike O'Reilly, in his official capacity as FCC Chairman; and (3) Edith Ramirez, in her official capacity as FTC Chairwoman – and seven new claims against Apple and HP.

In the proposed Second Amended Complaint, most of Mr. Sevier's claims against Apple and HP are identical to those asserted in the First Amended Complaint:

---

[8]      Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[9]      Twombly, 550 U.S. at 555.

[10]     Twombly, 550 U.S. at 555.

[11]     Eerie County, Ohio v. Morton Salt, Inc., 702 F.3d 860, 867 (6th Cir. 2012) (quoting Twombly, 550 U.S. at 555, 570).

[12]     Id. (quoting Iqbal, 556 U.S. at 679).

3

| Count | Claim | Defendant | Paragraphs | In the First Amended Complaint? |
|---|---|---|---|---|
| One | Fraud | Apple and HP | 316-324 | Yes |
| Two | Products Liability | Apple and HP | 325-329 | Yes |
| Three | Strict Liability | Apple and HP | 330-348 | Yes |
| Four | Negligence | Apple and HP | 349-352 | Yes |
| Five | Breach of Implied Warranty | Apple and HP | 354-357 | No |
| Six | Unfair and Deceptive Trade Practices | Apple and HP | 358-361 | No |
| Seven | Res Ipsa Loquitur Relating to Personal Injury | Apple and HP | 362-374 | Yes |
| Eight | Res Ipsa Loquitur Relating to Injury of Waste | Apple and HP | 375-383 | Yes |
| Nine | Intentional Infliction of Emotional Distress | Apple and HP | 384-390 | Yes |
| Ten | Tortious Interference | Apple and HP | 391-396 | Yes |
| Eleven | Negligent Infliction of Emotional Distress | Apple and HP | 397-401 | Yes |
| Twelve | Outrageous Conduct | Apple and HP | 402-404 | Yes |
| Thirteen | Civil Conspiracy | Apple and HP | 405 | No |
| Fourteen | Breach of the Duty of Good Faith and Fair Dealing | Apple and HP | 406-407 | No |
| Fifteen | Violation of the Lanham Act for False Advertising | Apple and HP | 408-409 | No |
| Sixteen | False Advertising | Apple and HP | 410-416 | No |
| Seventeen | Fifth Amendment | FCC | 418-421 | No |
| Eighteen | Fifth Amendment | FTC | 422-425 | No |
| Nineteen | Fourteenth Amendment | Eric Holder | 426-445 | No |
| Twenty | Fifth Amendment | Eric Holder | 446-468 | No |

4

| Count | Claim | Defendant | Paragraphs | In the First Amended Complaint? |
|---|---|---|---|---|
| Twenty One | Fifth and Fourteenth Amendments | Eric Holder | 469 | No |
| Twenty Two | Negligent Misrepresentation | Apple and HP | 470-473 | No |

Because the salient factual details in the proposed Second Amended Complaint are identical to those in the First Amended Complaint, Apple and HP adopt and incorporate by reference their summary of the factual allegations contained in the memorandum supporting their Motion to Dismiss.[13]

## III.   DISCUSSION

For the following reasons, the original counts in the First Amended Complaint – now numbered in the proposed Second Amended Complaint as Counts One, Two, Three, Four, Seven, Eight, Nine, Ten, Eleven, and Twelve – still fail to state plausible claims for relief, and the new counts – Counts Five, Six, Thirteen, Fourteen, Fifteen, Sixteen, and Twenty Two – would not withstand a motion to dismiss.  Thus, the Motion for Leave to Amend should be denied, and this case should be dismissed with prejudice.

**A.   The original counts – Counts One, Two, Three, Four, Seven, Eight, Nine, Ten, Eleven, and Twelve – fail to state plausible claims for relief, and the Motion for Leave to Amend should be denied as to those counts.**

**1.   Mr. Sevier's accusation that Apple and HP have a supposed "agency relationship" with "pornography predators" is without any basis and should be disregarded when determining whether to grant or deny the Motion for Leave to Amend.**

The proposed Second Amended Complaint contains nearly identical factual allegations as the First Amended Complaint.  In the Motion to Dismiss, among other arguments, Apple and HP

---

[13]    [Doc. #61 at 4-7].

highlighted the well-settled rule that they are not civilly responsible for the conduct of third-party internet content providers.[14] In response, Mr. Sevier now asserts an altogether novel theory and scatters it throughout the proposed Second Amended Complaint in a last-ditch effort to avoid dismissal: "Upon information and belief, all of these tactics employed by predatory pornographers were encouraged, sponsored, authorized, and ratified by Apple and [HP]."[15]

Attempting to overcome the clear rule that Apple and HP owed no duty to protect Mr. Sevier from third-party conduct – which, to be certain, undercuts all of his claims – Mr. Sevier has injected that accusation throughout the proposed Second Amended Complaint. Nevertheless, an "agency relationship" as well as the terms "encouraged, sponsored, authorized, and ratified" and their synonyms are merely conclusions disguised as factual allegations, and conspicuously absent from the proposed Second Amended Complaint are any factual allegations tending to support those conclusions, which Twombly and Iqbal require.[16] Accordingly, to satisfy Rule 8's

---

[14]     [Doc. #61 at 23].

[15]     [Doc. #64 ¶ 49] [emphasis added]; see also [Doc. #64 ¶ 101] ["Upon information and belief, Apple and Hewlett-Packard have 'joint,' 'symbolic,' 'implied,' and actual relationships with porn marketers and porn content creators. Defendants responses and reactions after the filing of this lawsuit that put them on direct notice of their unlawful conduct, demonstrates the existence of the agency relationship plainly that will only be further exposed through discovered [sic]."] [emphasis added]; [Doc. #64 ¶ 95] ["Before their products left the plant and before I was injured, Apple and Hewlett-Packard had an implied, ratified, and actual agency relationship with pornographic predators on the internet who they invited, commissioned, and encouraged through every means to do anything within their power to convert the Defendants customers into becoming porn addicts for the Defendants' primary financial benefit."]; [Doc. #64 ¶ 317] ["The Defendants did not tell him anything about their agency relationship with predatory pornographers."].

[16]     See, e.g., Skanga Energy & Marine Ltd. v. Arevenca S.A., 875 F. Supp. 2d 264, 269 (S.D.N.Y. 2012) ("To adequately allege an actual agency relationship, a plaintiff need only allege facts sufficient to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority."); In re Toyota Corp., 785 F. Supp. 2d 883, 911 (C.D. Cal. 2011) ("Plaintiffs may not rest on legal conclusions regarding agency that are cast as factual allegations. Notwithstanding any requirement under Rule 11 of the Federal Rules of Civil Procedure, these boilerplate cross-authority/cross-agency/ratification allegations run afoul of Twombly and Iqbal, and thus, the Court strikes paragraph 86 of the [Complaint].").

pleading standards, "a plaintiff must plead facts that plausibly support an inference that an agency relationship existed in order to survive a Rule 12(b)(6) motion."[17]

The proposed Second Amended Complaint contains no factual details that render those accusations of agency plausible – because, of course, they are false; have no basis in fact; and raise Rule 11 considerations – and on that account, this Court is not required to consider them when evaluating whether to grant the Motion for Leave to Amend.  Eliminating that theory from the proposed Second Amended Complaint, the defects that Apple and HP identified in the First Amended Complaint remain in Mr. Sevier's latest pleading, and the arguments outlined in support of the Motion to Dismiss are repeated below, all of which weigh in favor of denying the Motion for Leave to Amend and dismissing this case with prejudice.

2. **Count One: Fraud**

In Count One, under the heading "Fraud, including Fraudulent Misrepresentation, Fraudulent Concealment, Fraud and Deceit, Misrepresentation by Omission, and Constructive Fraud,"[18] Mr. Sevier alleges generally that Apple and HP fraudulently misrepresented that the Apple and HP Computers were "safe."[19]  Mr. Sevier asserts that (1) Apple and HP "intentionally misrepresented to [him] a material fact in regards to the dangers of their products in so far [sic] as they allowed him to come in contact with content on [the Apple and HP Computers] that damaged him" and (2) he "reasonably relied on the misrepresentation that the use of the [Apple

---

[17]     Jefferson v. Collins, 905 F. Supp. 2d 269, 285 (D.D.C. 2012) (citing Kiobel v. Royal Dutch Petro. Co., 621 F.3d 111, 195 (2d Cir. 2010); Acosta Orellana v. CropLife Int'l, 711 F. Supp. 2d 81, 111 n. 36 (D.D.C. 2010); Cumis Ins. Soc., Inc. v. Peters, 983 F. Supp. 787, 796 (N.D. Ill. 1997)).

[18]     In reviewing the proposed Second Amended Complaint, it is unclear whether "fraud and deceit" and "misrepresentation by omission" are intended to be causes of action distinct from fraudulent misrepresentation and fraudulent concealment, respectively.  In reviewing case law, there appears to be no distinction, and Mr. Sevier has not distinguished between them in terms of pleading.

[19]     [Doc. #64 ¶ 318].

and HP Computers] was safe" and, therefore, "continued his use of safari and suffered severe loss of enjoyment of life, loss of his capacity to earn a living, medical expenses, physical and mental pain and suffering."[20]

In the proposed Second Amended Complaint, Mr. Sevier attempts to add sufficient factual detail to meet the particularity requirements under Rule 9(b):[21] "Specifically around 3:00 in the afternoon on separate day in close proximity to one another in recent times that will be shown in discovery; specially through grossly dishonest advertising campaigns and through the false oral statement of the employees of Apple and Hewlett-Packard, . . . through stores in Nashville Tennessee located in Green Hills, near white bridge road and highway 65, I was lied to, tricked, misguided, duped, and maliciously pushed into purchasing a dangerous and defective device sold to me by these calculating defendants."[22] According to Mr. Sevier, he "asked the Apple and [HP] salesmen, as a part of standard operating procedure and prudence, if he could be be [sic] hurt by the product. They said 'no.' The Plaintiff queried whether the device was defect or could place him in danger in any way. The authorized agents of the Defendants said 'no.'"[23]

These allegations are insufficient to state a claim under Tennessee law, and this Court should deny the Motion for Leave to Amend as to Count One.

First, to state a claim for fraudulent misrepresentation, Mr. Sevier must plead the following with particularity as well as plausibility: "(1) [Apple and HP] made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in

---

[20]     [Doc. #64 ¶¶ 317-18].

[21]     FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

[22]     [Doc. #64 ¶ 96].

[23]     [Doc. #64 ¶ 99].

regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) [Mr. Sevier] reasonably relied on the misrepresented material fact; and (6) [Mr. Sevier] suffered damage as a result of the misrepresentation."[24]

Count One does not state a plausible claim. First, assuming that Apple and HP, in fact, described the computers Mr. Sevier purchased as "safe" or that they would not "place him in danger," those are imprecise statements of opinion. Under Tennessee law, an opinion cannot be the basis for a misrepresentation claim,[25] and this Court can decide that issue as a matter of law. Further, Mr. Sevier alleges that he understood the unadorned statement that the Apple and HP Computers were "safe" or that they would not "place him in danger" to mean that they were incapable of accessing pornography.[26] Interpreting a general statement that the computers were "safe" or free from "danger" as implying that they were "unable to access pornography" is patently unreasonable. No adult living in this country could reasonably believe that because a computer manufacturer described its products as "safe" or free "from danger" that such a description meant that, when the internet was accessed from those products, pornography could not be retrieved. Nor is there any legal basis on which to conclude that Mr. Sevier's subjective and self-serving interpretation of those general statements is sufficient to hold Apple and HP

---

[24] Hamilton County Emergency Comm'ns Dist. v. BellSouth Telecomms., LLC, 890 F. Supp. 2d 862, 878 (E.D. Tenn. 2012) (quoting Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008)).

[25] See, e.g., Sunderhaus v. Perel & Lowenstein, 388 S.W.2d 140, 142-43 (Tenn. 1965) (distinguishing between "fact" and "opinion" – the latter being inactionable for purposes of fraud); Dozier v. Hawthorne Dev. Co., 262 S.W.2d 705, 711 (Tenn. Ct. App. 1953) ("If affirmative and fraudulent expressions of opinion cannot amount to fraud or justify a rescission, then certainly a mere nondisclosure of a matter of an opinion cannot amount to fraud or justify relief.") (citation omitted).

[26] [Doc. #28 ¶ 317] ["Apple and Hewlett Packard intentionally misrepresented to the Plaintiff a material fact in regards to the dangers of their products in so far [sic] as they allowed him to come in contact with content on their machines that damaged him."].

9

civilly liable on account of Mr. Sevier's extrapolations. In fact, as Mr. Sevier concedes, "pornography was not ever mentioned by either party" when he purchased the computers.[27]

Using the factual details pleaded here, Mr. Sevier could not "reasonably" have believed that, because Apple and HP supposedly described their computers as "safe" or "free from danger," he would be protected from pornography when accessing the internet, especially when he typed in sexually suggestive words like "fuckbook" into the web browser.[28] Accordingly, insofar as Mr. Sevier is attempting to claim fraudulent misrepresentation, the Motion for Leave to Amend should be denied.

Second, as to his concealment claim, Mr. Sevier claims that Apple and HP failed to warn him that pornography was available on the internet.[29] To sustain a claim for fraudulent concealment, Mr. Sevier must "show that 'a party who has a duty to disclose a known fact or condition fail[ed] to do so, and another party relie[d] upon the resulting misrepresentation, thereby suffering injury.'"[30] Count One fails because Apple and HP owed no duty to protect Mr.

---

[27]    [Doc. #64 ¶ 154].

[28]    [Doc. #64 ¶ 48] ["As stated in the original complaint, I state again: misspelling 'Facebook' and doing a search for 'cream pie' lead me into porn sites that overwhelmed my ability to resist temptation and infected me with addicting content."].
        In his initial version of the Complaint, filed on June 19, 2013, Mr. Sevier elaborated on that incident: "In using safari, the Plaintiff accidentally misspelled 'facebook.com' which lead him to 'fuckbook.com' and a host of websites that caused him to see pornographic images that appealed to his biological sensibilities as a male . . . ." [Doc. #1 ¶ 40].

[29]    [Doc. #64 ¶ 321] ["Apple and Hewlett Packard were aware of the abundance of obscene pornography that could be access[ed] through the normal use of their devices. Yet, neither Apple nor HP did anything to prevent the Plaintiff from coming in contact with the damaging content."].

[30]    Hamilton County, 890 F. Supp. 2d at 879 (quoting Chrisman v. Hill Home Dev., Inc., 978 S.W.2d 535, 538-39 (Tenn. 1998)).

Sevier from his own addictive tendencies or, specifically, to warn him about what, according to Mr. Sevier, "40,000,000 Americans" view on a "daily" basis.[31]

Emphasizing the narrow scope of this claim, "Tennessee courts have generally found that a duty to disclose information can arise under three circumstances: '(1) where there is a previous definite fiduciary relation between the parties, (2) where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other, and (3) where the contract or transaction is intrinsically fiduciary and calls for perfect good faith.'"[32]

There are no allegations in the proposed Second Amended Complaint that even remotely suggest that Apple and HP owed fiduciary obligations to Mr. Sevier – only that, because Apple and HP employ technical experts, they somehow owe Mr. Sevier a fiduciary duty in the form of shielding him from internet pornography.[33] There is no basis in law for claiming that technical expertise imposes a fiduciary duty to protect adults, such as Mr. Sevier, from content provided by third parties on the internet. There are no cases imposing that duty, and the facts of this case certainly do not counsel in favor of finding one. Absent a duty to disclose, which the law supplies only in exceptional circumstances, there can be no claim for fraudulent concealment.[34]

---

[31]     [Doc. #28 ¶ 22].

[32]     Hamilton County, 890 F. Supp. 2d at 879 (quoting GuestHouse Int'l, LLC v. Shoney's N. Am. Corp., 330 S.W.3d 166, 195 (Tenn. Ct. App. 2010)).

[33]     [Doc. #64 ¶ 87].

[34]     Ooltewah Mfg. Inc. v. Country Coach, Inc., No. 05-221, 2005 WL 2671126, at *5 (E.D. Tenn. Oct. 18, 2005) ("Plaintiff has failed to plead with particularity its claim for fraudulent concealment. Although Plaintiff alleged Defendant knew of the engine mounting frames defect in the motorcoach and then concealed this fact from purchasers of the motorcoaches, Plaintiff does not allege or implicitly allege Defendant had a duty to disclose the alteration in the engine mounting frames. Nowhere has Plaintiff alleged the parties were in a confidential relationship or the transaction was intrinsically fiduciary. Further, Plaintiff does not claim the engine mounting frames defect could not be discovered through ordinary diligence. In addition, Plaintiff does not state the failure to

11

Third, Mr. Sevier has newly asserted a constructive fraud claim against Apple and HP. Under Tennessee law, constructive fraud "is commonly employed where there has been an abuse of a fiduciary or confidential relationship between the parties to the contract."[35] However, just as this Court concluded in <u>Thompson v. American General Life & Accident Insurance Co.</u>, Mr. Sevier "has not alleged facts which show a confidential relationship [with Apple or with HP] which would give rise to the legal or equitable duty required for constructive fraud."[36]

Mr. Sevier's fraud claim – whether for misrepresentation, concealment, or constructive fraud – is implausible on its face. One cannot be held liable for selling computers that connect to the internet, whether or not they were described as "safe" or free "from danger," which is the sum and substance of Mr. Sevier's claims.

### 3. Counts Two, Three, Four, and Seven: Products Liability, Strict Liability, Negligence, and Res Ipsa Loquitur Relating to Personal Injury

In Counts Two, Three, Four, and Seven, Mr. Sevier argues that Apple and HP are strictly liable and negligent for selling the Apple and HP Computers without a pre-installed pornography filter.[37] Although Mr. Sevier "has filed several claims against [Apple and HP], each is covered by the Tennessee Product Liability Act" ("TPLA").[38]

---

disclose was material. In sum, Plaintiff did not plead with particularity his averment of fraudulent concealment. Accordingly, the Court will DISMISS Plaintiff's claim for fraudulent concealment.").

[35] <u>Hopper v. Moling</u>, No. W2004-02410-COA-R3-CV, 2005 WL 2077650, at *7 (Tenn. Ct. App. Aug. 26, 2005).

[36] <u>Thompson v. Am. Gen. Life & Accident Ins. Co.</u>, 404 F. Supp. 2d 1023, 1029 (M.D. Tenn. 2005) (Campbell, J.) (dismissing a constructive fraud claim).

[37] [Doc. #64 ¶¶ 325-52, 362-74].

[38] <u>Maness v. Boston Scientific</u>, 751 F. Supp. 2d 962, 967 (E.D. Tenn. 2010); <u>see also</u> <u>Browder v. Pettigrew</u>, 541 S.W.2d 402, 404 (Tenn. 1976) ("[I]n a products liability action in which recovery is sought under the theory of negligence, the plaintiff must establish the existence of a defect in the

Whether proceeding under a design or warning theory, Mr. Sevier must plead that the Apple and HP Computers, as manufactured and sold, were "in a defective condition or unreasonably dangerous."[39]   Specifically, Mr. Sevier must plead with plausibility that "(1) the [Apple and HP Computers] w[ere] defective and/or unreasonably dangerous, (2) the defect existed at the time the [Apple and HP Computers] left the manufacturer's control, and (3) [his] injury was proximately caused by the [Apple and HP Computers]."[40]

Mr. Sevier has not alleged that the Apple and HP Computers contained a plausible defect. Although Mr. Sevier has identified a barrage of purported injuries – including, for example, "psychological[] harm[]," "addicti[on]," and "a decrease[d] quality of life" – injury alone is insufficient to state a claim for relief.[41]   Instead, "the issue is whether the alleged defective design or manufacturing of the [Apple and HP Computers] caused [Mr. Sevier] pain."[42]  Whether the claim is that the Apple and HP Computers were "unreasonably dangerous"[43] or were in a

_____

product just as he does in an action where recovery is sought under the strict liability theory or for breach of warranty, either express or implied.").

[39]   TENN. CODE ANN. § 29-28-105(a) ("A manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.").

[40]   Sigler v. Am. Honda Motor Corp., 532 F.3d 469, 483 (6th Cir. 2008) (citing King v. Danek Med., Inc., 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000)).

[41]   King, 37 S.W.3d at 435 ("In a product liability claim, the fact that a plaintiff is injured is not proof of a defect in the product.").

[42]   Maness, 751 F. Supp. 2d at 970 (citing Browder, 541 S.W.2d at 404).

[43]   A product is "unreasonably dangerous" when it "is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition."  TENN. CODE ANN. § 29-28-102(8).

"defective condition,"[44] those claims collapse into a single inquiry: Has the plaintiff "show[n]

that there is something wrong with the product"?[45]

To answer that question, Mr. Sevier asserts that the Apple and HP Computers should

have included a pre-installed pornography filter.[46]   But Mr. Sevier does not contend that the

Apple and HP Computers failed to operate as expected – in fact, they did by affording him with

internet access.   He contends only that Apple and HP, in his opinion, could have improved the

product.[47]   "[I]t is well-established in Tennessee," however, "that such a possibility of <u>an

alternative design</u> is completely insufficient to find a product 'defective.'"[48]   Thus, just as the

---

[44]      A "defective condition" is "a condition of a product that renders it unsafe for normal or
anticipatable handling and consumption."  TENN. CODE ANN. § 29-28-102(2).

[45]      <u>Fulton</u>, 872 S.W.2d at 911 (quoting <u>Tatum v. Cordis Corp.</u>, 758 F. Supp. 457, 461 (M.D.
Tenn. 1991)).

[46]      [Doc. #64 ¶ 328] ["The devices were in an unsafe condition without having installed filtering
porn software or control settings that block porn at the time it left the manufacturing plant."]; [Doc.
#64 ¶ 371] ["The defendants knew that it would be an easy and inexpensive fix for them to sell their
products on safe mode, which would filter out illicit pornographic content."].

[47]      In that regard, this case is an outlier and unlike the prototypical products liability case against
a software provider where a plaintiff claims that the software failed to operate as expected.  <u>See, e.g.</u>,
<u>Graves v. CAS Med. Sys., Inc.</u>, 735 S.E.2d 650, 652-53 (S.C. 2012) (analyzing product liability
claim against a software provider based on the software's failure to trigger an alarm as an infant's
heart rate dropped and eventually stopped); <u>Peavey Elecs. Corp. v. Baan USA, Inc.</u>, 10 So. 3d 945,
949-50 (Miss. App. 2009) (analyzing product liability claim that software failed to operate "out of
the box"); <u>Henry Scien, Inc. v. Strombe</u>, 102 S.W.3d 675, 679 (Tex. 2002) (analyzing class
allegations that software failed to operate as expected).
         In the proposed Second Amended Complaint, Mr. Sevier attempts to escape this conclusion
by asserting that he "does not contend that Apple and [HP] could merely improve the product" – he
supposedly "contends that they intentionally and maliciously sold their product in defective way[s] to
cause the Plaintiff to become addicted and dependent on their product . . . ."  [Doc. #64 ¶ 129].  The
balance of the proposed Second Amended Complaint suggests otherwise, as Mr. Sevier repeatedly
labels the Apple and HP Computers "defective" only because Apple and HP have not implemented
his proposal regarding pornography filters.  [Doc. #64 ¶¶ 169, 203, 213, 237, 239, 247, 326, 328,
368, 387].

[48]      <u>Alexander v. Antonio Zamperla, S.p.A.</u>, No. E2009-01049-COA-R3-CV, 2010 WL 3385141,
at *6 (Tenn. Ct. App. Aug. 27, 2010) (citing <u>Curtis v. Univ. Match Corp.</u>, 778 F. Supp. 1421, 1430
(E.D. Tenn. 1991)) (emphasis added); <u>see also</u> <u>Shoemake v. Omniquip Int'l, Inc.</u>, 152 S.W.3d 567,

14

Eastern District of Tennessee in <u>Hayes v. Spectorsoft Corp.</u> dismissed a products liability claim against a software provider because, at best, the plaintiff produced evidence only of "measures [the defendant] <u>could</u> have taken" to allegedly improve software and admittedly to avoid the plaintiff's injuries,[49] this Court should deny the Motion for Leave to Amend as to Counts Two, Three, Four, and Seven because Mr. Sevier has failed to plead a plausible defect.

### 4. <u>Count Eight: Res Ipsa Loquitur Relating to Injury of Waste</u>

In Count Eight, Mr. Sevier argues that Apple and HP have caused unspecified taxes to be wasted because, in the absence of pre-installed pornography filters, he believes that there is an increase in crime associated with "sex trafficking, child pornography, and other forms of criminal sexual misconduct."[50] Under this theory, "[w]asting tax pay[er] dollars is an injury to tax payers, like [Mr. Sevier]," and according to Mr. Sevier, he "has been directly injured by [Apple's and HP's] breach of [their] duty in this regard and has standing under this claim as a taxpayer."[51] Count Eight should be dismissed with prejudice because (1) it fails to state a plausible claim for relief and (2) Mr. Sevier lacks standing to seek this sort of relief, and therefore, the Motion for Leave to Amend should be denied.

---

573 (Tenn. Ct. App. 2004) ("A departure from the required standard of care is not demonstrated by simply showing that there was a better, safer, or different design which might have avoided the injury. A manufacturer is not required to incorporate the ultimate safety features in a product. The manufacturer is not an insurer of its product. It is not required to design a perfect or accident-proof product.") (citations omitted).

[49]    <u>Hayes v. Spectorsoft Corp.</u>, No. 08-187, 2009 WL 3713284, at *11 (E.D. Tenn. Nov. 3, 2009) ("Plaintiff's expert opines that SpectorSoft's software is both 'defective' and 'unreasonably dangerous.' He suggests that there are measures SpectorSoft could have taken to ensure that its software is not mishandled, such as alerting users to monitoring. However, this is not enough to trigger liability for a defective product under Tennessee law.") (citing <u>Shoemake</u>, 152 S.W.3d at 573).

[50]    [Doc. #64 ¶ 381].

[51]    [Doc. #64 ¶ 383].

First, res ipsa loquitur is not a standalone claim; therefore, Count Eight should be dismissed. As the Tennessee Court of Appeals has noted, "[r]es ipsa loquitur is a rule of evidence, not a rule of law," and "[i]t is intended to come to the aid of plaintiffs who have no direct evidence of a defendant's negligence, by providing a specialized vehicle for considering circumstantial evidence in negligence cases."[52] Nevertheless, before Mr. Sevier may even invoke res ipsa loquitur, he "must demonstrate that he . . . was injured by an instrumentality that was in [Apple's and HP's] exclusive control."[53] Here, after Mr. Sevier purchased the Apple and HP Computers, they were no longer under the "exclusive control" of Apple or HP, and res ipsa loquitur cannot supply an inference of negligence when, as here, Mr. Sevier "exclusive[ly] control[led]" the Apple and HP Computers.[54]

Second, even assuming that res ipsa loquitur is a standalone claim – which it is not – Mr. Sevier's taxpayer status does not establish standing under Article III. As the Supreme Court has explained, "[t]he irreducible constitutional minimum of standing contains three requirements: [1] injury in fact, [2] causation, and [3] redressability."[55] None of those conditions is satisfied. In

---

[52] Burton v. Warren Farmers Co-op, 129 S.W.3d 513, 525-26 (Tenn. Ct. App. 2002) (quoting Seavers v. Methodist Med. Ctr., 9 S.W.3d 86, 91 (Tenn. 1999)) (emphasis added).

[53] Seavers, 9 S.W.3d at 19; see also Towle v. Phillips, 172 S.W.2d 806, 808 (Tenn. 1943) ("One essential to the application of res ipsa loquitur is that the instrumentality or thing which caused the accident must have been under the sole control, the exclusive management, of the defendant. Such was not the case here. This airplane had dual controls, one before each seat, and it could be operated with either set of controls. It is not shown that the controls in front of the passenger were disconnected. So it is plain that the course of the machine might have been directed by Towle as well as by Webb. Webb did not have exclusive control and the rule relied on is not to be invoked against him.").

[54] See, e.g., Towle, 172 S.W.2d at 808 (holding that res ipsa loquitur was inapplicable when, as in this case, the plaintiff could have been operating the allegedly defective device at the time of the injury).

[55] Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-03 (1998).

fact, the Sixth Circuit has expressly rejected a "tax burden" as an injury capable of judicial redress.

In Coyne v. American Tobacco Co., two plaintiffs sued various tobacco manufacturers, wholesalers, and retailers because the defendants' products allegedly had caused the State of Ohio to unnecessarily expend taxpayer funds for the healthcare of its citizens.[56] The district court dismissed the lawsuit after "conclud[ing] that plaintiffs lacked standing to sue on the basis of their alleged 'tax burden' injury,"[57] and the Sixth Circuit affirmed because "a plaintiff's claim must be more than a 'generalized grievance' that is pervasively shared by a large class of citizens."[58] Applying that standard to the Coyne plaintiffs, the Sixth Circuit readily concluded that, "under settled law," the plaintiffs lacked standing because they "have not suffered an injury that is distinct from the injury shared by all Ohio taxpayers and public employees."[59]

Likewise, Mr. Sevier is attempting to seek recovery for injuries to third parties and to the public treasury as a result of criminal investigations and prosecutions ostensibly resulting from

---

[56]  Coyne v. Am. Tobacco Co., 183 F.3d 488, 491 (6th Cir. 1999).

[57]  Id.

[58]  Id. 494 (citing Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 474-75 (1982)).

[59]  Id. at 494-95 ("Article III requires that a plaintiff show that he personally has suffered some actual or threatened injury as a result of the allegedly illegal conduct of the defendant. Here, Plaintiffs have not suffered a legally cognizable injury sufficient to confer standing. Although Plaintiffs contend that they have a 'special interest' in state funds, and thus bear a 'tax burden,' Plaintiffs have not suffered an injury that is distinct from the injury shared by all Ohio taxpayers and public employees. Furthermore, Plaintiffs do not allege facts to distinguish themselves from all other Ohio taxpayers. Indeed, Plaintiffs' injury is not direct or particularized to Plaintiffs, as they seek damages not for any personal injuries, but rather for the injury to others – individual smokers and the State of Ohio. Significantly, the Supreme Court has recognized that a plaintiff who complains of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts is generally said to stand at too remote a distance to recover. Thus, under settled law, the alleged 'tax burden' injury is not an injury in fact sufficient to confer standing.").

Apple and HP's failure to shield customers from internet pornography.[60]  Even crediting that

dubious causal chain, considering <u>Coyne</u>, Mr. Sevier has failed to allege a cognizable injury

under Article III of the Constitution, which deprives this Court of jurisdiction over Count Eight.

Furthermore, Mr. Sevier's claim utterly ignores the requirement of redressability, as the

relief sought will not prevent taxpayers, including Mr. Sevier, from gaining unrestricted access to

pornography on the internet.   The fundamental principle of redressability requires "that

prospective relief will remove the harm," and the plaintiff must show "that he personally would

benefit in a tangible way from the court's intervention."[61]   On this point, <u>Coyne</u> similarly

establishes that Mr. Sevier's claim fails because a victory in this lawsuit would not redress the

purported "waste" of taxpayer funds – even accepting the doubtful premise that the supposed

"waste" is a result of Apple and HP's failure to install pornography filters on Apple and HP

Computers.[62]

For these reasons, this Court is without jurisdiction to consider Count Eight, such that it

should be dismissed, and the Motion for Leave to Amend should be denied.

---

[60]      [Doc. #64 ¶¶ 375-83].

[61]      <u>Warth v. Seldin</u>, 422 U.S. 490, 505, 508 (1975).

[62]      <u>Coyne</u>, 183 F.3d at 496 ("Plaintiffs' complaint suggests no likelihood that victory in this suit
would result in either their receipt of a tax refund or a reduction in the tax bill for Ohio citizens
generally. Reimbursement of the public treasury would not necessarily redress Plaintiffs' claimed
'tax burden' injury because even if Plaintiffs secured a favorable judgment, the power to decrease
state taxes or issue a tax refund rests within the province of the legislative and executive branches of
the State of Ohio. As the district court correctly pointed out, it is the state's decision to determine
how to utilize a recovery of state funds. Plaintiffs' injuries are not 'redressable,' as Plaintiffs cannot
establish that a favorable court decision is likely to remedy the alleged violation.").

5.   **Counts Nine and Twelve: Outrageous Conduct and Intentional Infliction of Emotional Distress**

In Counts Nine and Twelve, Mr. Sevier claims that Apple and HP committed intentional infliction of emotional distress ("IIED").[63]   In the proposed Second Amended Complaint, Mr. Sevier contends that Apple and HP are liable under an IIED theory because, in essence, they sold devices that provided access to unfiltered third-party internet content.[64]   Because Mr. Sevier has not pleaded factual allegations establishing that Apple and HP committed "outrageous" conduct, the Motion for Leave to Amend as to Counts Nine and Twelve should be denied.

Under Tennessee law, "to establish a <u>prima facie</u> case of [IIED]," Mr. Sevier must plead the following with plausibility: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct must result in serious mental injury to the plaintiff."[65]

As to the second element, liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[66] Accordingly, Tennessee courts

---

[63]     To be certain, under Tennessee law, IIED and outrage are the same torts.  <u>See, e.g.</u>, <u>Gregory v. City of Memphis</u>, No. 07-2445, 2013 WL 1966969, at *4 (W.D. Tenn. May 10, 2013) ("[T]he 'tort of outrage' . . . is known under Tennessee law as intentional infliction of emotional distress.").

[64]     In the proposed Second Amended Complaint, Mr. Sevier attempts to add factual detail previously not alleged in the First Amended Complaint, but he adds nothing new – he simply elaborates on the general premise that selling the Apple and HP Computers without pre-installed internet filters is supposedly "outrageous," which it is not.  [Doc. #64 ¶¶ 169-77].

[65]     <u>Miller v. Wilbanks</u>, 8 S.W.3d 607, 612 (Tenn. 1999) (citing <u>Bain v. Wells</u>, 936 S.W.2d 618, 622 (Tenn. 1997)).

[66]     <u>Bain</u>, 936 S.W.2d at 623.

19

limit claims to those "in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'."[67]

On that account, the Tennessee Supreme Court has recognized that "[t]he outrageous conduct requirement is a high standard which has consistently been regarded as a significant limitation on recovery"[68] and "which provides the primary safeguard against fraudulent and trivial claims."[69] And, to be certain, "it is the court's duty in the first instance to apply that standard and determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."[70]

For example, Tennessee's appellate courts have rejected IIED claims predicated on admittedly illegal discrimination,[71] the commission of judicial perjury in connection with an adulterous affair,[72] a landlord's failure to take remedial action as to his tenants' illegal drug trafficking operation occurring at his rental property,[73] and false and publically-made accusations concerning a couple's "sexual improprieties, public drunkenness, public nudity, and allegations accusing one of [them] of statutory rape of a former student."[74] There are no cases where a Tennessee court has permitted an IIED claim to proceed against a defendant on facts analogous

---

[67]     Id.

[68]     Doe 1 ex rel. Doe v. Roman Catholic Diocese, 154 S.W.3d 22, 39 (Tenn. 2005).

[69]     Id. (quoting Miller, 8 S.W.3d at 614).

[70]     Bain, 936 S.W.2d at 622 (quoting Medlin v. Allied Inv. Co., 398 S.W.2d 270, 274 (1966)).

[71]     Arnett v. Domino's Pizza I, L.L.C., 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003).

[72]     Alexander v. Inman, 825 S.W.2d 102, 104 (Tenn. Ct. App. 1991).

[73]     Riley v. Whybrew, 185 S.W.3d 393, 399 (Tenn. Ct. App. 2005).

[74]     Lane v. Becker, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010).

to those asserted by Mr. Sever against Apple and HP – that is, for selling a device capable of connecting to the internet without restriction.

Applying the "high standard" of outrageousness to Counts Nine and Twelve, this Court should dismiss the claims and deny the Motion for Leave to Amend. Mr. Sevier's allegations fail to show that selling the Apple and HP Computers, without pre-installed pornography filters, was "so outrageous that it is not tolerated by civilized society." Indeed, just as Mr. Sevier acknowledges in the proposed Second Amended Complaint, civilized society has been purchasing computers with unrestricted access to the internet since the availability of the technology. Unrestricted internet access is a standard feature on computers sold today, as Mr. Sevier repeatedly acknowledges.[75] Mr. Sevier's allegations do not even begin to satisfy the heavy burden of "outrageousness" under Tennessee law.

### 6. Count Ten: Tortious Interference

In Count Ten, Mr. Sevier claims that Apple and HP caused his marriage's dissolution and, therefore, seeks redress under a tortious-interference-with-a-contract theory.[76] Because Mr. Sevier is attempting to repackage a long-since-repudiated tort – alienation of affection – Count Ten fails to state a claim, and the Motion for Leave to Amend should be denied.

---

[75]    [Doc. #64 ¶ 176] ["Unrestricted internet access is a standard feature on computers sold today only because of lobbying and politics."]. Whatever the purported cause, Mr. Sevier admits the commonality of the practice, which weighs decisively against finding the failure to pre-install pornography filters "outrageous" as a matter of law.

[76]    [Doc. #64 ¶¶ 391-96]. As compared to the First Amended Complaint, Mr. Sevier now alleges that "[t]he fact that [he] was married at the time of the sale was known to the Defendants" because he "wore a wedding band when he bought the products" and because his "marriage license is part of the public record, giving the Defendants constructive knowledge of his wedding." [Doc. #64 ¶ 394]. For the reasons detailed above, Count Ten fails as a matter of law whether or not Apple and HP knew that Mr. Sevier was married when he purchased the Apple and HP Computers.

Before 1989, as an alienation-of-affection claim, aggrieved spouses could sue third-parties for interfering with and causing the dissolution of their marriage. To state a claim, a plaintiff was required to show – just as Mr. Sevier is attempting to plead in this case – that the defendant "willful[ly] and malicious[ly] interfere[d] with the marriage relation without justification or excuse."[77] In 1989, however, the Tennessee Legislature abolished that claim,[78] and in 1991, the Tennessee Supreme Court echoed that sentiment: "Because we find that the reasons for the cause of action no longer exist, and because the public policy of the state, as expressed by the Legislature, is offended by alienation of affections actions, we hold that the common-law tort of alienation of affections is hereby abolished."[79]

Tennessee's appellate courts have not recognized an intentional-interference-with-a-contract claim in the marital context, nor have they addressed whether a plaintiff may camouflage an alienation-of-affection claim as an intentional-interference-with-a-contract claim in order to withstand a motion to dismiss. Litigants in other jurisdictions, however, have attempted exactly this strategy, which has been consistently rejected. For example, as the South Dakota Supreme Court explained, "[t]hose courts held the actions alleging tortious interference with a marital contract were really actions for alienation of affections, a tort which had been abolished in their respective jurisdictions," and on that account, "[t]he courts refused to allow

---

[77]    McMullen v. McMullen, 778 S.W.2d 859, 860 (Tenn. Ct. App. 1989) (Donnell v. Donnell, 415 S.W.2d 127, 132 (Tenn. 1967)).

[78]    Dupuis v. Hand, 814 S.W.2d 340, 342-43 (Tenn. 1991); see also TENN. CODE ANN. § 36-3-701 ("The common law tort of alienation of affection is hereby abolished.").

[79]    Dupuis, 814 S.W.2d at 346; see also Hoye v. Hoye, 824 S.W.2d 422, 426-27 (Ky. 1992) ("To posit that one person possesses rights to the feelings of another is an anachronism. Yet this is the foundation for tortious interference with the marital relation where the presence of a third party is blamed for changes in the marriage. . . . We therefore rule to abolish the action known as tortious interference with the marital relation, relying on the premise that affection between spouses cannot be owned, i.e., that the underlying assumption of the tort is an anachronism.").

these attempts to circumvent the judicially or legislatively abolished causes of action by disguising the suits as other types of torts."[80]   For the same reason and consistent with Tennessee's policy against alienation-of-affection claims, Count Ten – and any claim in this case that Apple or HP interfered with Mr. Sevier's marriage – should be dismissed because (1) Tennessee has abolished an alienation-of-affection claim and (2) Mr. Sevier is attempting to avoid that abolition by simply masking his claim as one for intentional interference with a contract.  Thus, the Motion for Leave to Amend should be denied.

### 7. Count Eleven: Negligent Infliction of Emotional Distress

Mr. Sevier alleges in Count Eleven that Apple and HP are liable for negligent infliction of emotional distress.  According to Mr. Sevier, Apple and HP negligently inflicted emotional distress by breaching a duty of care and "selling him a device that was not set on 'safe mode,' and by negligently, accidentally or recklessly failing to provide [him] with notice of the dangers of pornography that was accessible through the device."[81]   Insofar as the Motion for Leave to Amend concerns Count Eleven, the Motion should be denied because Apple and HP owed no such duty to Mr. Sevier.

---

[80]     Pickering v. Pickering, 434 N.W.2d 758, 762 (S.D. 1989) (collecting cases); see also Weiszmann v. Kirkland & Ellis, 732 F. Supp. 1540, 1545 (D. Colo. 1990) ("Based upon my review of the complaint, I conclude that Weiszmann's second claim for relief, alleging negligent interference with the marital relationship, and Weiszmann's third claim for relief, denominated intentional interference with contractual relations mask a claim for alienation of affections, and must be dismissed."); Weaver v. Union Carbide Corp., 378 S.E.2d 105, 109 (W.Va. 1989) ("We must look to the substance of the plaintiff's complaint and not merely to its form.  It is clear that the plaintiff seeks only damages that relate to the impairment of her marriage and to her eventual divorce. . . . To allow her suit would also run counter to the policies underlying the legislative abolition of suits for alienation of affections. . . . The claim for intentional interference with the marital relationship is, in its essence, one for alienation of affections and is barred by [the legislative abolition of alienation-of-affection claims].").

[81]     [Doc. #64 ¶ 399].  In the proposed Second Amended Complaint, Mr. Sevier has alleged no new facts in terms of his negligent-infliction-of-emotional-distress claim.

Under Tennessee law, a negligent-infliction-of-emotional-distress claim requires a plaintiff to plead "the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation," and "[i]n addition, the plaintiff must prove that the defendant's conduct caused a serious or severe emotional injury."[82] As to the "serious or severe emotional injury," there can be recovery only for those consequences with which "a reasonable person, normally constituted, would be unable to adequately cope."[83]

Even assuming that Mr. Sevier successfully pleaded causation and the level of injury required under Tennessee law − which he did not − Count Eleven fails because there is no legal duty to sell a computer in "safe mode," nor is there a duty for a commercial vendor to educate a consumer about the putative dangers of pornography. This Court can reach that conclusion without any need for an evidentiary record because whether a duty is cognizable "is a question of law to be determined by the court."[84]

Here, there are no cases comparable to the novel theories floated by Mr. Sevier. Further, the absence of "controlling or even persuasive case law that would impute an affirmative duty on [Apple or HP] to provide assistance to its customers" in the manner pitched by Mr. Sevier strongly weighs in favor of finding that Apple and HP owed no duty here.[85] But even in the absence of "controlling or even persuasive case law," this Court should apply the well-settled principle that defendants, such as Apple and HP, do not "have a duty to act affirmatively to

---

[82]    Rogers v. Louisville Land Co., 367 S.W.3d 196, 206 (Tenn. 2012).

[83]    Id. at 208 (quoting Camper v. Minor, 915 S.W.2d 437, 446 (Tenn. 1996)).

[84]    McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995).

[85]    Riddle v. Lowe's Home Ctrs., Inc., 802 F. Supp. 2d 900, 905 (M.D. Tenn. 2011).

protect others from conduct <u>other than their own</u>."[86]   In other words, "as a general rule in Tennessee, [defendants] do not have a duty to control the conduct of other persons to prevent them from causing physical harm to [plaintiffs]."[87]   That rule applies equally even when third parties, such as internet content providers, are engaging in or otherwise facilitating criminal activity, as Mr. Sevier claims.[88]

Applying that standard here, Apple and HP had no duty to protect Mr. Sevier from the purportedly injurious effects resulting from his access to third-party content.   Nowhere in the proposed Second Amended Complaint has Mr. Sevier alleged with plausibility that Apple or HP published or otherwise exercised any editorial control over the third-party pornography because, of course, they did not.   There is no basis in law from which to conclude that Apple and HP had a duty to sell the Apple and HP Computers in "safe mode," as Mr. Sevier claims, nor is there any basis from which to conclude that Apple and HP were obligated to educate Mr. Sevier about the purportedly addictive nature of pornography.   Put simply, contrary to Mr. Sevier's suggestion, there is no common law duty to "protect us from [ourselves]."[89]

Apple and HP, therefore, owed no duty to protect Mr. Sevier from himself or from the allegedly dangerous content created by third parties, and this Court should deny the Motion for Leave to Amend.

---

[86]      <u>Ham v. Hosp. of Morristown, Inc.</u>, 917 F. Supp. 531, 534 (E.D. Tenn. 1995) (citing <u>Nichols v. Atnip</u>, 844 S.W.2d 655, 661 (Tenn. Ct. App. 1992)) (emphasis added).

[87]      <u>Id.</u> (citing <u>Nichols</u>, 844 S.W.2d at 661).

[88]      <u>See, e.g.</u>, <u>Giggers v. Memphis Housing Auth.</u>, 277 S.W.3d 359, 364 (Tenn. 2009) ("At common law, a private person or corporation, as distinguished from governmental units, had no duty whatsoever to protect others from the criminal acts of third parties.") (quoting <u>Cornpropst v. Sloan</u>, 528 S.W.2d 188, 191 (Tenn. 1975)).

[89]      [Doc. #64 ¶ 242].

**B.** **The new counts – Counts Five, Six, Thirteen, Fourteen, Fifteen, Sixteen, and Twenty Two – fail to state plausible claims for relief, and the Motion for Leave to Amend should be denied as to those counts.**

Mr. Sevier has included seven new counts against apple and HP: (1) Count Five (Breach of Implied Warranty);[90] (2) Count Six (Unfair and Deceptive Trade Practices);[91] (3) Court Thirteen (Civil Conspiracy);[92] (4) Court Fourteen (Breach of the Duty of Good Faith and Fair Dealing);[93] (5) Court Fifteen (Violation of the Lanham Act for False Advertising);[94] (6) Count Sixteen (False Advertising);[95] and (7) Count Twenty Two (Negligent Misrepresentation).[96]

For the following reasons, these counts fail to state plausible claims for relief, and the Motion for Leave to Amend should be denied.

**1.** **Count Five: Breach of Implied Warranty**

In Count Five, Mr. Sevier alleges that Apple and HP breached the implied warranty of merchantability "in the sale of the phones, laptop, and computers by selling in the condition [they] w[ere] in."[97] According to Mr. Sevier, Apple and HP "maliciously exposed [him] to obscene and highly addictive pornographic content without [sic], knowing that the material was highly addictive," and Apple and HP allegedly "designed their products in such a fashion to

---

[90]    [Doc. #64 ¶¶ 354-57].

[91]    [Doc. #64 ¶¶ 358-61].

[92]    [Doc. #64 ¶ 405].

[93]    [Doc. #64 ¶¶ 406-07].

[94]    [Doc. #64 ¶¶ 408-09].

[95]    [Doc. #64 ¶¶410-17].

[96]    [Doc. #64 ¶¶ 470-73].

[97]    [Doc. #64 ¶ 355].

enable this to occur, knowing that their actions would harm [him] for their personal financial benefit."[98] In a conclusory manner, Mr. Sevier alleges that "[t]he goods sold to [him] were unfit for the ordinary purposes for which such goods are used" – that is, Mr. Sevier "wanted to use the product for business, not sex."[99] Count Five fails to state a claim for relief, and insofar as the Motion for Leave to Amend seeks permission to add Count Five, the Motion should be denied.

Tennessee has adopted the UCC, and under the UCC, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."[100] To be "merchantable," goods must be, inter alia, "fit for the ordinary purposes for which such goods are used."[101] Nevertheless, merchantability claims are evaluated under the same standards as any other product liability claim because, as defined by Tennessee Code § 29-28-102(6), a "product liability action" includes "all actions based upon the . . . theories [of] . . . breach of warranty, express or implied . . . ."[102]

Accordingly, for the reasons described above with respect to the other product liability claims – Counts Two, Three, Four, and Seven – Mr. Sevier has failed to plead that the Apple and HP Computers are defective simply because they permit Mr. Sevier to access uncensored third-party internet content, and the Motion for Leave to Amend, therefore, should be denied.

---

[98]     [Doc. #64 ¶ 355].

[99]     [Doc. #64 ¶ 357].

[100]     TENN. CODE ANN. § 47-2-314(1).

[101]     TENN. CODE ANN. § 47-2-314(2)(c).

[102]     TENN. CODE ANN. § 29-28-102(6); see also Higgs v. Gen. Motors Corp., 655 F. Supp. 22, 23 (E.D. Tenn. 1985) ("[I]t makes no difference whether the complaint is couched in terms of negligence, strict liability or breach of warranty, it has generally been held in the State of Tennessee that in order for a plaintiff to recover under any theory of product liability, the plaintiff must establish that the product was defective and unreasonably dangerous at the time the product left the control of the manufacturer.") (emphasis added).

## 2.    Count Six: Unfair and Deceptive Trade Practices

In Count Six, Mr. Sevier quotes various provisions from Tennessee's Consumer Protection Act of 1977 ("the TCPA")[103] and summarily asserts that (1) Apple and HP "engaged in deceptive trade practices by leading [him] to believe that their products were safe;" (2) Apple and HP "made no mention whatsoever that they were exposing [him] to addicting content through their pornographic agents;" and (3) Apple and HP "commission[ed] and invited their agents to cause [him] to interact with their pornographic content."[104] Mr. Sevier claims that he allegedly "developed codependence and attachment to [Apple's and HP's] products."[105]

Because Count Six fails to state a claim for relief, leave to amend the First Amended Complaint so as to include that claim should be denied.  Specifically, only enumerated "unfair or deceptive acts or practices" are actionable violations of the TCPA. Under Tennessee Code § 47-18-109(a)(1) – i.e., the provision identified by Mr. Sevier as the basis for his claim – "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages."[106]   Under § 47-18-104(b), the TCPA "declare[s]" forty-five practices – and only those practices – to be "unlawful" and, therefore, actionable pursuant to § 47-18-

---

[103]    [Doc. #64 ¶ 359].

[104]    [Doc. #64 ¶ 360].

[105]    [Doc. #64 ¶ 361].

[106]    TENN. CODE ANN. § 47-18-109(a)(1) (emphasis added).

109(a)(1).[107]  Mr. Sevier has not identified which, if any, unlawful practice is implicated by his allegations, and on review, none of the unlawful practices identified in § 47-18-104(b) fit Mr. Sevier's allegations.  At best, Count Six appears to rely on the catch-all provision under § 47-18-104(b)(27), which generally prohibits "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person," but critically, the "enforcement of [that] subdivision . . . is vested <u>exclusively</u> in the office of the attorney general and reporter and the director of the division."[108]

Thus, because none of the unlawful practices identified by § 47-18-104(b) are implicated by Mr. Sevier's allegations and because Mr. Sevier lacks standing to enforce the catch-all provision, Count Six fails to state a claim for relief, and granting leave to amend the First Amended Complaint would be futile.

### 3.    <u>Count Thirteen: Civil Conspiracy</u>

In Count Thirteen, and without any factual support, Mr. Sevier asserts that Apple and HP conspired against him:

> At all times relevant to the factual allegations in this complaint, the Defendants conspired and knowingly acted in concert with the intent and understanding that they were subjecting the Plaintiff to unwanted pornography addiction, that they were aware of the dangerous hazard and deliberately mislead the Plaintiff in a scam to maximize profits, that they had set out to make him chemically dependent on their products, that they were acting in concert with predatory pornographers to invade the Plaintiff's privacy for their own personal benefit. As such, the unlawful tortious acts of all of the Defendants undertaken in the course of, and in furtherance of this civil conspiracy are imputed to each other and each Defendant is civil liable for all of the unlawful and tortious misconduct as if they actually, physically committed or ordered the commission of such unlawful, tortious acts themselves.

---

[107]    TENN. CODE ANN. § 47-18-104(b) (itemizing the practices declared unlawful and within the scope of the Consumer Protection Act of 1977).

[108]    TENN. CODE ANN. § 47-18-104(b)(27) (emphasis added).

[Doc. #64 ¶ 405].

Under Tennessee law, a civil conspiracy is "a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means."[109]  "There is no liability under a theory of civil conspiracy unless there is underlying wrongful conduct."[110]  "The damage done is the gist of the action, not the conspiracy. . . . [T]he simple act of conspiracy does not furnish a substantive ground of action."[111]

First, for the reasons outlined in this Opposition, none of Mr. Sevier's claims are plausible, and each should be dismissed.  Because Mr. Sevier has failed to identify "underlying wrongful conduct" that is actionable, there can be no civil conspiracy, which, under Tennessee law, is necessarily derivative.[112]

Second, Count Thirteen fails to include any factual allegations. Instead, Mr. Sevier has simply asserted that there existed a conspiracy between Apple, HP, and unidentified "predatory pornographers."[113]  For purposes of assessing plausibility, there must be factual allegations that "do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."[114]  Those standards are not satisfied when, as here, the plaintiff rests

---

[109]    Brown v. Birman Managed Care, Inc., 42 S.W.3d 62, 67 (Tenn. 2001) (quoting Chenault v. Walker, 36 S.W.3d 45, 52 (Tenn. 2001)).

[110]    Levy v. Franks, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004).

[111]    Tenn. Pub. Co. v. Fitzhugh, 52 S.W.2d 157, 158 (Tenn. 1932).

[112]    Levy, 159 S.W.3d at 82 (citing Greene v. Brown & Williamson Tobacco Corp., 72 F. Supp. 2d 882, 887 (W.D. Tenn. 1999)) ("Therefore, if the claim underlying the allegation of civil conspiracy fails, the conspiracy claim must also fail.").

[113]    [Doc. #64 ¶ 405].

[114]    Lambert v. Hartman, 517 F.3d 433, 439 (6th Cir. 2008).

30

only on "legal conclusions or unwarranted factual inferences."[115]  Given the complete absence of

any factual allegations tending to suggest the existence of a conspiracy, the Motion for Leave to

Amend should be denied.

###    4.    Count Fourteen: Breach of the Duty of Good Faith and Fair Dealing

According to Count Fourteen, Apple and HP were in a "special relationship" with Mr.

Sevier due to their "special training and certifications" that Mr. Sevier lacked.[116]  As a result of

Apple and HP allegedly failing to warn Mr. Sevier about "the addictive qualities of the

pornography" accessible through the internet, Mr. Sevier claims that Apple and HP are liable for

breaching the duty of good faith and fair dealing.[117]

First, Count Fourteen fails because "a breach of the implied covenant of good faith and

fair dealing is not an independent basis for relief."[118]  "[A]bsent a valid claim for breach of

contract, there is no cause of action for breach of the implied covenant."[119]  Mr. Sevier has

broadly alleged that Apple and HP have engaged in "grievous and perfidious misconduct in

extreme bad faith in breaching the [unidentified] contract in [unspecified yet supposedly]

---

[115]    Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000).

[116]    [Doc. #64 ¶ 407].

[117]    [Doc. #64 ¶ 407].

[118]    Golf Sci. Consultants, Inc. v. Cheng, No. 07-152, 2009 U.S. Dist. LEXIS 37721, at *16 (E.D. Tenn. May 4, 2009) (quoting Solomon v. First Am. Nat'l Bank of Nashville, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989)); see also Lyons v. Farmers Ins. Exchange, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000) ("As to Lyons's cause of action designated 'breach of covenant of good faith and fair dealings,' this is not a cause of action in and of itself but as a part of a breach of contract cause of action.").

[119]    Envoy Corp. v. Quintiles Transnat'l Corp., No. 03-539, 2007 U.S. Dist. LEXIS 54429, at *8 (M.D. Tenn. July 26, 2007) (emphasis added).

unconscionable ways,"[120] but his legal conclusion – which this Court is not required to consider when assessing plausibility – is insufficient to show a "valid claim for breach of contract," which consequently precludes a good faith claim. Because Mr. Sevier "do[es] not otherwise allege breach of contract [in the proposed Second Amended Complaint], [his] implied covenant claim must be dismissed."[121] Count Fourteen fails to state a claim, and the Motion for Leave to Amend should be denied.

Second, under Tennessee law, the implied duty of good faith and fair dealing "cannot supply 'essential terms of a contract on which the minds of the parties have not met.'"[122] To state a plausible claim, therefore, Mr. Sevier must "point to specific contractual provisions violated by [Apple and HP]."[123] Mr. Sevier has not identified a "specific contractual" provision that Apple and HP violated because, of course, no contractual term required them to "tell him about the addictive qualities of the pornography" available from third-party internet content providers. Instead, Mr. Sevier is attempting to supply absent contractual terms through a bad faith claim, which is prohibited by Tennessee law. The Motion for Leave to Amend should be denied as to Court Fourteen.

---

[120]     [Doc. #64 ¶ 407].

[121]     Pugh v. Bank of Am., No. 13-2020, 2013 WL 3349649, at *11 (W.D. Tenn. July 2, 2013) (citing Ike v. Quantum Servicing Corp., No. 11-02914, 2012 WL 3727132 (W.D. Tenn. Aug. 27, 2012)).

[122]     Lawhorn & Assocs., Inc. v. Patriot Gen. Ins. Co., 917 F. Supp. 538, 543 (E.D. Tenn. 1996) (quoting Winfree v. Educators Credit Union, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995)).

[123]     Lawhorn, 917 F. Supp. at 543.

### 5. Count Fifteen: Violation of the Lanham Act for False Advertising

In Count Fifteen, Mr. Sevier claims that Apple and HP have violated the Lanham Act by allegedly engaging in false advertising.[124]  Aside from quoting one provision of the Lanham Act – Section 43(a), codified at 15 U.S.C. § 1125(a)(1)(B) – and stating the elements for a false advertising claim under the Lanham Act, Mr. Sevier includes no factual allegations even tending to suggest that Apple or HP actually violated the Lanham Act.

Even if Mr. Sevier had included any factual allegations, Count Fifteen should be dismissed because there is no "consumer standing" under Section 43(a).  Although Section 43(a) generally authorizes "any person who believes that he or she is or is likely to be damaged" by false advertising to assert a claim, Section 45 clarifies that "[t]he intent of this chapter is . . . to protect persons engaged in [interstate] commerce against unfair competition; [and] to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks . . . ."[125]

Section 45 "makes clear that the focus of the statute is on anti-competitive conduct in a commercial context," and "[c]onferring standing to the full extent implied by the text of § 43(a) would give standing to parties, such as consumers, having no competitive or commercial interests affected by the conduct at issue."[126]  On that account, every court that has considered the issue has rejected "consumer standing" under Section 43(a),[127] which is the provision Mr.

---

[124]     [Doc. #64 ¶¶ 408-09].

[125]     15 U.S.C. § 1127.

[126]     Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 229 (3d Cir. 1998).

[127]     See, e.g., Made in the USA Foundation v. Phillips Foods, Inc., 365 F.3d 278, 281 (4th Cir. 2004) ("[A] consumer does not have standing under the Lanham Act to sue for false advertising. Because Made in the USA Foundation sues as a consumer and as a representative of consumers, we

Sevier has invoked. As the Second Circuit observed, "Congress's purpose in enacting § 43(a) was to create a special and limited unfair competition remedy, virtually without regard for the interests of consumers generally and almost certainly without any consideration of consumer rights of action in particular."[128] Thus, "to have standing for a false advertising claim [under the Lanham Act], the plaintiff must be <u>a competitor of the defendant and allege a competitive injury</u>."[129]

Here, Mr. Sevier has failed to allege that he is a competitor of Apple or HP or that he suffered a competitive injury as a result of the purportedly false advertising. Therefore, because Mr. Sevier is attempting to assert a claim under Section 43(a) as a consumer rather than as a competitor who suffered a competitive injury as a result of unfair competition, he lacks standing, and leave to amend the First Amended Complaint to add Count Fifteen should be denied.

### 6. <u>Count Sixteen: False Advertising</u>

Pursuant to "Tennessee Common Law," Count Sixteen alleges that Apple and HP engaged in false advertising. In support of that claim, without any factual detail, Mr. Sevier asserts that Apple and HP (1) "engaged in unfair, deceptive, untrue, and misleading advertising;" and (2) Mr. Sevier "suffered injury in fact and lost money and property."[130]

---

affirm the district court's order dismissing, for lack of standing, the Foundation's Lanham Act claim."); <u>Procter & Gamble Co. v. Amway Corp.</u>, 242 F.3d 539, 561 (5th Cir. 2001) (no consumer standing); <u>Stanfield v. Osborne Indus.</u>, 52 F.3d 867, 873 (10th Cir. 1995) (same); <u>Barrus v. Sylvania</u>, 55 F.3d 468, 470 (9th Cir. 1995) (same); <u>Serbin v. Ziebart Int'l Corp., Inc.</u>, 11 F.3d 1163, 1179 (3d Cir. 1993) (same); <u>Dovenmuehle v. Gilldorn Mortgage Midwest Corp.</u>, 871 F.2d 697, 700 (7th Cir. 1989) (same).

[128]     <u>Colligan v. Activities Club of N.Y.</u>, 442 F.2d 686, 692 (2d Cir. 1971).

[129]     <u>Stanfield v. Osborne Indus.</u>, 52 F.3d 867, 873 (10th Cir. 1995) (emphasis added).

[130]     [Doc. #64 ¶¶ 410-12, 414-16].

First, under Tennessee common law, there is no claim for "false advertising." The undersigned have located no case where a federal court, applying Tennessee's substantive law, or one of Tennessee's appellate courts has recognized a free-floating cause of action for "false advertising," as Mr. Sevier suggests. On this basis, permitting Mr. Sevier to amend the First Amended Complaint and add Count Sixteen would be futile.

Second, even if there is such a claim, Count Sixteen's allegations fail to include sufficient factual details. As the Sixth Circuit has explained, to survive a motion to dismiss (and, by extension, justify a request for leave to amend), a plaintiff must "identify facts that plausibly support[] his legal conclusion[s]" and, therefore, cannot "simply . . . refer[] to conclusory allegations in the complaint that the defendant violated the law."[131] Count Sixteen, however, contains only bare legal conclusions that Apple and HP purportedly "engaged in unfair, deceptive, untrue, and misleading advertising,"[132] which is insufficient to state a plausible claim for relief.

Because (1) there is no claim for "false advertising" under Tennessee common law and, even if there is such a claim, (2) Count Sixteen contains no factual detail, Count Sixteen does not state a plausible claim for relief, and the Motion for Leave to Amend should be denied.

### 7.    Count Twenty Two: Negligent Misrepresentation

Finally, Mr. Sevier asserts that Apple and HP negligently made unspecified misrepresentations regarding their products. According to Mr. Sevier, "Apple and HP made false statements of past or existing fact regarding their product[s];" "[t]he statements were directed at the suing party;" and "[t]he statements had acted to induce the suing party to

---

[131]    16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B., 727 F.3d 502, 504 (6th Cir. 2013).

[132]    [Doc. #664 ¶ 411].

contract."[133]  Mr. Sevier offers no further allegation in support of Count Twenty Two, but even viewing these allegations in the light most favorable to him, they are insufficient as a matter of law to state a claim for negligent misrepresentation.

"Tennessee has adopted the definition of negligent misrepresentation found in the Restatement of Torts (Second) § 552 (1977),"[134] which provides that "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."[135]

Throughout the proposed Second Amended Complaint, Mr. Sevier does not claim that Apple or HP misrepresented a material fact – only that they should have informed him that pornography is available on the internet.  Under Tennessee law, "[n]ondisclosure of a material fact may also give rise to . . . negligent misrepresentation when the defendant has a duty to disclose and the matters not disclosed are material."[136]  Whether Apple and HP were duty-bound

---

[133]  [Doc. #64 ¶¶ 471-73].

[134]  Shelby v. Delta Air Lines, Inc., 842 F. Supp. 999, 1015 (M.D. Tenn. 1993) (citing Stinson v. Brand, 738 S.W.2d 186, 190 (Tenn. 1987); Tartera v. Palumbo, 453 S.W.2d 780, 784-85 (Tenn. 1970); Marshalls of Nashville v. Harding Mall, 799 S.W.2d 239, 242 (Tenn. Ct. App. 1990)).

[135]  RESTATEMENT (SECOND) OF TORTS § 552 (1977); see also Parks v. Fin. Fed. Savings Bank, 345 F. Supp. 2d 889, 894 (W.D. Tenn. 2004) ("The elements necessary to establish a claim of negligent misrepresentation are: (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and (2) the defendant supplies faulty information meant to guide others in their business transactions; and (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relies upon the information.") (quoting Robinson v. Omer, 952 S.W.2d 423, 427 (Tenn. 1997)).

[136]  Justice v. Anderson County, 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997) (emphasis added).

to inform Mr. Sevier that there is pornography accessible on the internet is a question of law for the Court's resolution, and for the reasons described above with respect to Mr. Sevier's negligent infliction of emotional distress claim, Apple and HP owed no such duty.  In the absence of a disclosure duty, Count Twenty Two fails to state a claim for relief, and the Motion for Leave to Amend should be denied.

## IV.    <u>CONCLUSION</u>

Apple and HP respectfully request that this Court deny the Motion for Leave to Amend and dismiss this case with prejudice because none of the claims asserted in the proposed Second Amended Complaint state plausible claims for relief.

Respectfully Submitted,

Dated: <u>Tuesday, February 4, 2014</u>

*/s/ Sara A. Ford*
One of the Attorneys for Apple and HP

OF COUNSEL:
Sara A. Ford (admitted pro hac vice)
*sford@lightfootlaw.com*
Jeffrey P. Doss (admitted pro hac vice)
*jdoss@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone:     (205) 581-0700
Facsimile:      (205) 581-0799

Thomas A. Wiseman III, #11738
*tom@wisemanashworth.com*
WISEMAN ASHWORTH LAW GROUP PLC
511 Union Street, Suite 800
Nashville, Tennessee 37219
Telephone:      (615) 254-1877
Facsimile:       (615) 254-1878

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that a copy of the foregoing was served on the following through this Court's electronic filing system on this <u>4th</u> day of <u>February</u>, 2014:

       Chris Sevier
       Unit 247
       9 Music Square South
       Nashville, Tennessee 37203

                                 */s/ Sara A. Ford*
                                   OF COUNSEL

38