# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CHRIS SEVIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) CASE NO. 3:13-0607 |
| vs. | ) JUDGE CAMPBELL/KNOWLES |
| | ) |
| | ) |
| | ) |
| APPLE, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court upon Defendants' Motion to Stay Discovery. Docket No. 73. The Motion seeks a stay of discovery:

> in its entirety – including obligations to confer concerning a discovery plan, to submit a discovery plan, to make initial disclosures, to tender witnesses for depositions, and to serve and to respond to written discovery requests – until the Court rules on the Motion to Dismiss the First Amended Complaint; rules on Mr. Sevier's Motion for Leave to Amend the First Amended Complaint; and determines whether Mr. Sevier has asserted any plausible claims for relief in the First or Second Amended Complaints.

*Id*.

Plaintiff, who is acting pro se, is an attorney licensed to practice law in the state of Tennessee. Since December 19, 2011, however, his license status has been " inactive-disability." http://www.tbpr.org, accessed February 13, 2014.

Plaintiff initiated this action with the filing of a 50-page Complaint against only Apple,

Inc., which begins:

> NOW COMES the Plaintiff in a complaint for damages and states. Just for Apple's and the Court's convenience, my electronic group made a music video/vocal edit of Zedd's "Shave It Up" combined with the talk on "the demise of guys," that summarizes the issues in the lawsuit as it relates to rewiring, voyeurism products liability, and systemic problems that are the direct result of our collective arrogance to not do something about an [*sic*] problem area . . . .

Docket No. 1, p. 1.

Plaintiff states that he loves Apple, he believes in Apple, and that Apple has always been a pro-family company. *Id*., p. 1-2. His complaint, essentially, is that Apple has no reason "to overtly support pornography on line, explicit sexual content, which has led to the proliferation of arousal addict, sex trafficking, prostitution, and countless number of destroyed lives [including that of Plaintiff]." He demands that Apple sell all of its devices on "safe mode," with software present to filter out pornographic content. He states that if Apple agrees to sell its devices on safe mode before trial, he will terminate this litigation. *Id*., p. 2. He further states:

> For anyone to suggest that the policy proposed by the Plaintiff is unnecessary or unreasonable would be a demonstration of the very arrogance itself which proves the necessity for safeguards to protect our hearts in the first place. The human heart is what is at stake.

*Id.,* p. 4.

He claims to be a victim of Apple's product (*i.e*., a computer) that was sold to him "without any warning of the damage the pornography causes." *Id*., p. 4. He further suggests, "Apple should work in conjunction with the FBI to block in perpetuity any website that is undeniably known to be fostering prostitution, such as "backpage.com." *Id*., p. 17-18.

With regard to his specific complaints about his own situation, he states in part:

> 40. In using safari, the Plaintiff accidentally misspelled "facebook.com" which led him to "fuckbook.com" and a host of websites that caused him to see pornographic images that appeal to his biological sensibilities as a male and lead to unwanted addiction with adverse consequences.
>
> 41. The Plaintiff developed arousal addiction as a result of viewing pornographic content, which harmed the quality of his life.
>
> 42. The Plaintiff began to prefer the cyber beauties over his wife, which caused his marriage to fail. His wife abducted his son and disappeared, which was a subsequent consequence of Apple's decision to sell its computers not on "safe mode."
>
> 43. Before purchasing a Macbook, the Plaintiff had never seen pornographic images.
>
> . . .
>
> 49. When the Plaintiff bought his Apple Mac Book, no one at the apple store warned him that looking at pornographic images and videos could cause addictions to include arousal addiction or that the devise [*sic*] could be the gateway to accessing content that could cause a rewiring of his brain, which lead to the demise of his family, unemployment, and unwanted changes in life style.
>
> . . .
>
> 51. As human beings themselves, Apple employees know that a man is born full of harmonies an attacked to [*sic*] women engaging in sexual acts with the intent to cause vicarious arousal.

*Id*., p. 21-22, 23-24, 25.

Plaintiff raises claims for fraudulent misrepresentation, on the theory that he reasonably relied on misrepresentation that the use of the Apple computer was "safe." *Id*., p. 45. He raises a claim for violation of the Tennessee Products Liability Act on the theory that electronic devices sold by Apple were unreasonably dangerous, such that Apple should be held strictly liable for any injury caused by those products. *Id*., p. 45-47. He also raises claims for

3

outrageous conduct, intentional infliction of emotional distress, and negligent infliction of emotional distress. *Id*., p. 47-48.

Subsequently, Plaintiff filed a 50-page "First Amended Complaint," which in part added Hewlett Packard as a Defendant. Docket No. 28. He avers that he purchased a Hewlett Packard computer. *Id*., p. 38. His claims are similar to those made in his original Complaint, except that he also seeks to have the United States Government be responsive to the call of the British Prime Minister to form a joint task force with the UK to make pornography online more difficult to access. *Id*., p. 1. In the Amended Complaint, he refers to "Syria's nefarious use of chemical weapons." *Id*., p. 3. He states that a joint task force with the UK would impact the war on terror; he states "the worldwide web is an illusion"; and he claims "device makers cannot successfully invoke the Eichmann defense raised in the movie Hannah Arendt." *Id*., p. 6, 13, 19. He refers to "women who are chained to radiators in places like Thailand, Malaysia, and Greece, who are being sex trafficked by American tourists . . . ." *Id*., p. 7.

He later filed another document headed "First Amended Complaint." Docket No. 46. He then moved to consolidate the instant action with a lawsuit he filed in this Court December 23, 2013, "against A&E, President Obama, GLAAD, A+E, Hearst Corporation, and Walt Disney for the religious discrimination against a member of my church, Phil Robertson because he spoke out to limit a bad form of sex in the same way that I am speaking out to limit a bad form of sex in this case." Docket No. 44. That lawsuit is styled *Chris Sevier v. Arts and Entertainment Network (A&E), et al.,* No. 3: 13-1450, United States District Court for the Middle District of Tennessee.

On January 15, 2014, Defendants filed a Motion to Dismiss for Failure to State a Claim

(Docket No. 60) and a supporting Memorandum of Law (Docket No. 61).  On January 21, 2014, Plaintiff filed a 353-page "Second Amended Complaint" with approximately 50 pages of exhibits.  The Second Amended Complaint is liberally "illustrated," with numerous photographs, many of which have been "doctored."  For example, he depicts Adolf Hitler holding what appears to be an Apple computer, and U. S. Attorney General Eric Holder as a Nazi military officer.  Docket No. 64, p. 9.  He presents a Time magazine cover with President Obama dressed as a Nazi officer with a "Hitler mustache."  *Id*., p. 10.  (It is not immediately clear what these images have to do with any of his allegations).  His Second Amended Complaint purports to add Defendants Eric Holder, United States Attorney General, Mike O'Reilly "in his capacity at the Federal Communication Commission ("FCC")," and Edith Ramirez, Chairman of the Federal Trade Commission ("FTC").  Docket No. 64, p. 1.

Plaintiff has filed a Complaint, a First Amended Complaint, another First Amended Complaint, and a Second Amended Complaint, but he has never sought leave of Court to amend any of his Complaints.

In addition to the above, Defendants point out that Plaintiff has engaged in a pattern of harassment by the submission of alleged "discovery" requests which, Defendants contend, reflects that his goal is to force action through harassment and attempted intimidation.  For example, in an e-mail dated December 18, 2013, from Plaintiff to Defendants' counsel, Plaintiff states:

> <u>At every turn any attempt to oppose my demands here will be met with extreme pugilism.  Expect acrimonious litigation at levels you have not experienced.  This is not Alabama</u>.

Docket No. 74, p. 4 (underlining in original).

5

On December 24, 2013, Plaintiff sent Defendants' counsel an e-mail stating in part:

> <u>I warning [*sic*] you, Sara, get out of this case, and do it now, or I'll make you famous.</u>
>
> <u>You have never litigated a case like this believe me</u>. . . . .

*Id.*, p. 4 (underlining in original).

On January 27, 2014, Plaintiff sent Defendants' counsel an e-mail referring to her as "Professor of Smut." *Id.*, p. 6.

Plaintiff has also filed a Motion seeking leave to serve over 300 Interrogatories to Defendants. Docket No. 56. A small sampling of Plaintiff's 300 Interrogatories is as follows:

> Do the Defendants believe that history repeats itself?
>
> Do the Defendants have any interest in not committing crime?
>
> I want a list of the executive/employees at Apple and Hewlett-Packard who have the actual authority to embrace the policy but as [*sic*] so greedy, arrogant, depraved hearted, blind, callus, and cruel that they would deny the demand poising our world in the same way that the companies who were brought to justice for toxic tort violations did. Those individuals and I are going to have a series of come to Jesus Meetings through this federal action. I am going to make them see what they are distributing and what effects they are having by not complying with my demand that would have prevented my injury if the policy had been in place.
>
> Are the Defendants proponents of child pornography and child molestation?
>
> Do the Defendants want their grand children [*sic*] to post pornographic videos of themselves having sex with someone on "youporn.com" because the Defendants did not adopt the policy?
>
> Do the Defendant's [*sic*] think they are God?
>
> Has Professor Ford, who is a Professor at the University of Alabama School of law, even bothered to explain the potential for class action lawsuits against you in this regard or is he too busy

6

> racking up billable hours? Do not allow Professor Ford to line her
> pockets with your money, like the lawyers in Rich v. Sevier did,
> when they took advantage of Mr. Rich's self-entitlement
> syndrome, taking him for millions and exposing him and
> themselves to massive liability that continues to keep them tied up
> in litigation that will not end very well for the Celebrity
> Apprentice winner.

Docket No. 74, p. 9-10.

Finally, Plaintiff has stated that he wishes to force Defendants' representatives to view "graphic pornography" and "torture porn" during their depositions. Docket No. 74, p. 10.

The Sixth Circuit has recognized that, "Trial Courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Gettings v. Building Laborers Local 310 Fringe Benefits Fund,* 349 F.3d 300, 304 (6th Cir. 2003) (citations omitted). Additionally, "Limitations on pretrial discovery are appropriate where claims may be dismissed based on legal determinations that could not have been altered by any further discovery." *Id.* (citation omitted).

The undersigned believes there is a significant question concerning the Court's subject matter jurisdiction. The Sixth Circuit has stated:

> [A] district court may at any time, *sua sponte* dismiss a complaint
> for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of
> the Federal Rules of Civil Procedure when the allegations of the
> complaint are totally implausible, attenuated, unsubstantial,
> frivolous, devoid of merit, or no longer open to discussion.

*Apple v. Glenn*, 183 F.3d 477, 479 (*citing Hagans v. Lavine,* 415 U.S. 528, 536-37 (1974).

As Defendants state, "This is a truly exceptional case that warrants a stay of discovery." Docket No. 74, p. 1.

For the foregoing reasons, Defendants' Motion to Stay Discovery (Docket No. 73) is

GRANTED, pending further Orders of the Court.

IT IS SO ORDERED.

                                                  _____
                                                  E. Clifton Knowles
                                                  United States Magistrate Judge