IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRIS SEVIER, | ) | |
| | ) | |
|       **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| vs. | ) | **CASE NO. 3:13-0607** |
| | ) | **JUDGE CAMPBELL/KNOWLES** |
| | ) | |
| APPLE, INC., | ) | |
| | ) | |
|       **Defendant.** | ) | |

# REPORT AND RECOMMENDATION

This matter is before the Court upon a request made by Defendant Apple, Inc. ("Apple") in a "Response to the Court's Order." Docket No. 219. The Court will treat Apple's request as a Motion to Dismiss. Plaintiff has filed a "Response to the Question Presented by the Decision in Google" (Docket No. 223), which the Court will treat as a Response to that Motion.

By way of background, Plaintiff previously filed a similar lawsuit in this Court against Google, Samsung, Android, LG, Motorola, x-Box, Microsoft, Governor Bill Haslam, former Attorney General Bob Cooper, Planned Parenthood, Dell, Inc., and Verizon Wireless Tennessee Partnership. *Sevier v. Google, et al.*, No. 3:14-cv-1313, United States District Court for the Middle District of Tennessee. The undersigned submitted two Reports and Recommendations in that action recommending that Plaintiff's claims in *Google* be dismissed. Case No. 3:14-cv-1313. Docket Nos. 210, 211. Judge Sharp subsequently adopted those Reports and Recommendations, and dismissed the *Google* action with prejudice in its entirety. Docket No. 235, Case No. 3:14-cv-1313. As will be discussed in greater detail below, Judge Sharp

dismissed Plaintiff's claims in *Google* with prejudice because he had failed to abide by Fed. R. Civ. P. 8(a)(2) & (d)(1). Judge Sharp also ruled that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999).

Following Judge Sharp's dismissal of *Google*, the undersigned entered an Order in the instant action requiring Defendants to file a written document, in appropriate form, addressing the impact, if any, of Judge Sharp's Order in *Google*. Docket No. 207. The undersigned's Order also allowed Plaintiff to respond. Apple filed a Response to the Order. Docket No. 219. In that Response, Apple requested that the Court dismiss this action with prejudice for the same reasons adopted by Judge Sharp in *Google*. Docket No. 219, p. 12. As noted, Plaintiff filed a "Response to the Question Presented by the Decision in Google" (Docket No. 223), which the Court will treat as a Response in Opposition to Apple's Motion.

This matter is before the Court following the filing of Plaintiff's "Third Amended Complaint."[1] Docket No. 214. Plaintiff is an attorney licensed to practice law in the State of

---

[1] Even though Plaintiff refers to his current Complaint as the "Third Amended Complaint," that designation is simply not correct. Plaintiff filed his original Complaint on June 19, 2013 (Docket No. 1). On November 13, 2013, without leave of Court or any other authority, Plaintiff simply filed a "First Amended Complaint." Docket No. 28. On December 20, 2013, Plaintiff filed another document headed "First Amended Complaint." Docket No. 46. On January 21, 2014, Plaintiff filed a "Second Amended Complaint." Docket No. 64.
   On September 9, 2014, Plaintiff filed a "Emergency Motion Amend [*sic*] the Original Complaint, or Alternatively, Leave to Amend the Current Existing Complaint." Docket No. 137. Plaintiff did not, however, attach a proposed Amended Complaint to that Motion.
   On November 25, 2014, Plaintiff filed a document headed "Notice of Filing Proposed First Amended Complaint Attachment and Requests a Supplement and Alternatively Request to Amend the Pre-existing Motion to Amended Complaint and to Supplement the Pending Motion to Continue Apple's Motion to Dismiss the Original Complaint." Docket No. 161. The very same day, Plaintiff filed a "Second Motion to Amend the Original Complaint and Request to Add Hewlett-Packard." Docket No. 162. Plaintiff did attach to that Motion a document headed "Amended Complaint." Docket No. 162-1. Before the Court ruled on that Motion, Plaintiff filed a "Motion to File a Third Amended Complaint," on May 22, 2015. Docket No. 212. That same

Tennessee, but since December 19, 2001, his license status has been "Disability Inactive." *See* www.http://www.tbpr.org. *See also In Re: Mark Christopher Sevier, BPR #26577,* No. M2011-02608-FC-BPR-BP (Tenn. Dec. 19, 2011).

In this action, Plaintiff essentially complains that he purchased one or more products from Apple that allowed him to view pornography on the Internet, which he contends had a devastating impact on his entire life. In a former version of his Complaint, Plaintiff alleged that, in using his Apple computer, he accidentally misspelled "facebook.com" which led him to "fuckbook.com" and a haste of websites that caused him to see pornographic images. Docket No. 1, p. 21. Before he purchased the Apple computer, he had never seen pornographic images. *Id.*, p. 21-22.

Plaintiff sues Apple under a number of theories, all of which basically boil down to an argument that Apple should have installed a "pornography filter" on devices that he (and others as well) purchased from Apple that would have filtered out Internet pornography unless he made a conscious decision to turn off the filter. In other words, Plaintiff contends that he should not

---

day, he filed a document headed "Third Amended Complaint." Docket No. 214. The Court has recently granted Plaintiff's "Motion to File a Third Amended Complaint." Docket No. 230. The Court further notes that, on May 23, 2015, Plaintiff filed a document headed "Response to Apple's Request for More Time to Response [*sic*]." Docket No. 216. For whatever reason, he simply attached to that document a document headed "Third Amended Complaint" (Docket No. 216-1), which he describes on the docket as "Exhibit third amended complaint option without footnotes total 70 pages." Docket No. 216-1, attachment description.

In many of his filings, Plaintiff lists "Hewlett-Packard" as a Defendant in the style of this case. In his Third Amended Complaint, however, Plaintiff does not sue Hewlett-Packard. Docket No. 214. Thus, Plaintiff has voluntarily dismissed any claims he may have had against Hewlett-Packard. Moreover, in many of his filings, Plaintiff refers to "Defendants," when there is only one Defendant in this action.

have been inadvertently allowed to view pornography on the Internet, and that he should have been able to view pornography only after turning off the pornography filter.

Plaintiff's Third Amended Complaint is 90 pages in length, and includes 100 footnotes. The following allegations are but a small sample of the Complaint as a whole:

> 10. The laptops and cell phones that came with preinstalled software were designed to allow the user to connect automatically to the internet. The devices were portable and not designed for stationary use; the devices were created to be carried around on one's person. The devices were not designed to be monitored and disregard of the realities of the innate urge to procreate in order to ensure the survival of the species. None of Apple's products came with preinstalled software that would have allowed me to "opt out" of interacting with illegally distributed and dangerous pornography that posed a threat to my reproductive, sexual, mental, spiritual, emotional, and relational health. Because of Apple's out of control greed, Apple refused to allow [*sic*] their customers to fully assume the risk of being left exposed to hard core pornography on their metallic boxes of smut. The airports on Apple's devices were activated in searching for wifi from right out of the box. The Defendant's product knowingly opened the door to predatory pornographers and invited them to hunt me down, which they did in accordance with Apple's self-serving expectations. The predatory pornographers that the Defendant and their co-conspirators enable, support, and encourage know how to smell out their prey and get them hooked into their damaging product for the paramount benefit of the Defendant and its co-conspirators. Due to the realities of the coolidge effect, one pornographic website might get old. Even watching vanilla sex might. This is why there are extreme torture and violent porn websites. Apple knows that their products are always necessary for porn addicts no matter how perversed down the sliding slope they may fall. Apple knows that it is at the helm of a porn pandemic, silent epidemic, and sexual holocaust but it does not care.
>
> 11. When the ISPs sold me their device, they were aware that I would be forced to encounter pornography through the normal use of their product in conjunction with device makers' product. The Defendant and their co-conspirators knew that this exposure would threaten the quality of my life, exploit my biology adversely, and

interject addiction at the expense of my family and health. The Defendant and its co-conspirators invited, welcomed, and encouraged predatory pornography to cause forced interaction through fraudulent tactics. I was subsequently inflicted with the perils of pornography to include adverse impact on reproductive health, mental health, and relational health. These injuries are ongoing and continuing. These injuries require continual ongoing treatment that the Defendant should be responsible for, as well as a host of other damages for the irreversible decrease quality in life and all the way down to the loss of my only son.

Docket No. 214, p. 8-9.

Just because Tim Cook is a radical homosexual atheist does not mean that he has the right to force everyone to conform to his self-destructive religious world view.

*Id*., p. 12.

17. I have the fundamental right to practice religion and to be free from unknowingly developing an addiction as a result of using the Defendant's products that interact and depend on devices that connect to the web. I want to reserve the right to choose what set of influences I will subject my heart, soul, mind, and emotions to. For government related purposes, work related purposes, and personal family purposes, I was required to own products sold by the Defendant. The Government of the United States has a duty to protect my fundamental religious liberties. My fundamental religious and health rights not the be forced [*sic*] into interacting with obscene content was trampled by Apple's disregard for the product safety and obscenity laws. My consent to exposure was not sought by the Defendant because Apple was only concerned with maximizing profits and was completely indifferent to my quality of life. In using the Defendant's products as intended, I developed a pornography addiction, which devastated the most important relationships in life. Relationships are spiritual. Sex is spiritual. Lust and sex out of context ruins nearly all relationships.

18. My wife, simply could not compete with the endless stream of ageless cyber vixens, who "never say no" and who were enhanced in every way to maximize arousal all thanks to Apple's total disregard for my safety and welfare. Real women are less clickable. Not so with the porn starlets, who offer no strings

attached and a life time void of confrontation and the intimacy. The sexually indecent material exploited by my biology and depleted my oxytocin, which crippling effect on my limbic system [*sic*]. Consequently, I was unable to obtain a bond with my wife and son. My wife left; she took my son and all of our property.

19. As the cherry on top, after my wife split, I was further subjected to a host of dehumanizing and depersonalizing civil and criminal litigation was [*sic*] a direct consequence of the porn compact. Forced exposure to pornography on filterless devices was the superceding cause of the costly litigation. The pornography addiction that the filterless products injured my business [*sic*], as well, which I was unable to maintain due to the infliction of an unwanted pornography addiction. . . .

20. The injurious desensitization and voyeurism that followed exposure to porn, as a result of the enterprise that the ISPs played a fundamental role in creating in conjunction with device makers and lobbying groups like planned parenthood, has managed to produce a termination of rights and adoption case [*sic*]. These civil lawsuits place me in a position of irreparable harm. My parental rights are subject to termination all because the tech companies and pornography companies partnered to inflict society with the same kind of fraud that the Cigarette Companies unleashed and for the same reasons – maximization of property by misleading the public about the harmlessness of their products. The District Attorney's office in Nashville is threatening to investigate and prosecute me for having admitted to being a porn addict because porn addiction naturally leads to a digression of a downgrade dopamine system, which causes an addict to seek more and more extreme visual sex to achieve the same fix and escapism from emotional challenges. Because of the fall of the nature of man, I have sued three Assistant District Attorneys in Nashville and deliberately thrown the former head of the Board of Professional Responsible [*sic*] under the bus publicly, for being a tyrannical scoundrel. In keeping with the spirit of prideful arrogance, a host of state officials in Tennessee have sought to engage in willful and outrageous retaliation all because I have publicly embarrassed many members in the public record due to my refusal to cowardly play "go along get along" as a matter of actual honor and integrity (foreign concepts in the Tennessee Justice System at large). The District Attorney's office promised to have me arrested and jailed for child porn violations because I admitted to having a porn addiction, which is the direct

> result of the porn compact. The assistant district attorney who knowingly brought a phony stalking case invented by F list celebrity John Rich, asserted at the hearing in January 2014 that because I admitted to being a porn addict, there was probable cause to have me investigated for exposure to child pornography. Meanwhile, I was never given the opportunity to consent to the forced exposure to pornography, which has served as a basis for the factory of malicious prosecution that the Nashville DA's office was ready to produce to cure it's "embarrassment."

Docket No. 214, p. 12-15.

> My dopamine level were [*sic*] impacted, like pavlov's dogs, I was conditioned to prefer porn stars over my wife. Like with meth, a person cannot be a casual user of pornography because dopamine is raised too high. P. 16 (footnotes omitted).

*Id.,* p. 16 (footnotes omitted).

> When the Defendants sold me their products, they knew I would be forced to encounter pornographic content that would cause adverse compulsive sexual behavior, arousal addiction, brain shrinkage, and decrease my capability to experience intimacy by highjacking my dopamine receptors.

*Id.*, p. 17 n.31.

> The brain cannot really tell a difference between real sex and porn, which creates co-dependency on the product providing the drug of detached sex with a voluptuous vixen.

*Id.*, p. 18.

> Apple has literally attempted to convince the Court that forcing its customers to masterbate [*sic*] to its products is in keeping with Apple's first amendment rights. The founding fathers would disagree.

*Id.*, p. 19.

> Adrenal gland stimulation addiction is birthed with disasterous results for the future of individual citizens with uncontainable collateral damaging consequences for others.

7

*Id.*, p. 21 (footnotes omitted).

> Since I became conditioned by the Defendant's pornography to desire to get the fix with women of the opposite sex, I began avoiding the dating process altogether . . . . while my wife may reject me in the bedroom for failure to take out the garbage, the prostitutes advertise – "when she says no, I'll say yes."

*Id.*, p. 21 n.38.

> If Apple was smart – and it's not – it would join me in the fight against sex trafficking, becoming part of the solution, and stop being the key part of the problem. Instead, the court must be responsive or it will have resolute former Judge Advocate to contend with. And I am not interested in "no" or the kind of abusive nonsense that I witnessed Judge Haynes manifested in the Rich case. The dark side of technology must be scaled back through minimal regulation . . . The Court should rethink twice [*sic*] before it reduces this case into an opportunity to to [*sic*] abuse its discretion for the sake of the public health, the welfare of the children, wives, and for future generation. I kneel before this Honorable Court and implore it with all of my essence that it enjoin this pathetic company from Cupertino for the sake of mankind and benefit of past and future victims of human trafficking.

*Id.*, p. 22.

> Apple and its co-conspirators are few in number. They can be readily identified. They must be regulated. They must be regulated through filters and top level domain down solutions, which I personally be [*sic*] having a come to Jesus meeting with ICANN. Failure to regulate the Device Makers and Internet Service Providers in this regard makes our Nation and World less free. It reduces us to a fish on the grass as a Nation sexually and culturally. We as a people deserve better. The Court needs to give me what I'm asking for.

*Id.*, p. 5.

> We humans are not merely animated pieces of meat. We are not just accidental particles.

*Id.*, p. 4.

Plaintiff sues Defendant under the following theories: strict liability/products liability; products liability (defective design: failure to warn); simple negligence; breach of the duty of good faith and fair dealing (negligent failure to test and warn, negligent failure to filter, strict liability); res ipsa looquitur [*sic*] relating to personal injury (negligent failure to warn, negligent failure to test, fraud, strict liability, improper burden shifting, failure to follow obscenity laws; breach of manufacturers' duties, deceptive trade practices, including failure to warn, failure to test, sale of defective and unreasonably dangerous products (strict liability, negligence, and breach of implied warranty); violation of state consumer protection statutes (unfair, unconscionable, and deceptive acts or practices); civil conspiracy; false advertising (Tennessee common law); negligent misrepresentation; intentional infliction of emotional distress; negligent infliction of emotional distress; outrageous conduct; breach of contract; "Rule 9 causes of action" violations of the racketeer influenced and corrupt organization statute (18 U.S.C. § 1962(c)); conspiracy to violate 18 U.S.C. § 1962(c); obscenity violations and racketeering; racketeering and sex trafficking; violation of 15 U.S.C. § 1051 *et seq*.; and Lanham Act for false advertising.

He further seeks 8 pages of relief, including the following:

> 2(e) Order each defendant [*sic*] to disclose, disseminate, and make available to the Department of Justice, Morality In Media, Family Research counsel, the States' Attorney General's Offices in all 50 states, Department of Human Services in all 50 states, and such public health and regulatory authorities as the Court may select, all documents relating to research previously conducted directly or indirectly by themselves and their respective agents, affiliates, servants, officers, directors, employees, and all persons acting in concert with them, that relate to the health consequences of interfacing with pornography and pornography addiction, and the ability to develop, update, and maintain custom made filters that

> will make effort to block pornographic images in websites;
>
> . . .
>
> 2(k) Order the Defendant to custom make and develop filtering software that makes a reasonable attempt to block pornography. Order the ISPs to zone pornography to the unused ports. Order the ISPs to sell their services with customers opted out of pornography. Require the Defendant customers [*sic*] to provide proof of ID in person before being allowed to opt-into interacting with pornography.

Docket No. 214, p. 83-85.

Plaintiff further sets forth 6 claims for relief that he asserts "[i]f allowed to proceed on behalf of the United States." *Id*., p. 86. The Court knows of no authority for the proposition that Plaintiff could proceed on behalf of the United States, nor does the Court believe Plaintiff has ever moved to do so.

Plaintiff also seeks attorneys fees under 18 U.S.C. § 1982 stating, "For anyone to even suggest that I cannot practice law is a ratification of a corrupt scheme ran [*sic*] by Nancy Jones, Krisann Hodges, and members of the Tennessee Supreme Court, who should be held accountable for service discrediting fraud." Docket No. 214, p. 86.

As discussed above, Plaintiff has filed a "Response to the Question Presented by the Decision in Google." Docket No. 223. Plaintiff's Response suffers from the same deficiencies as those of his Third Amended Complaint. It is essentially 25 pages of more of the same. For example, Plaintiff begins his argument regarding Rule 8 with the following statement:

> I believe in the constitutionally fundamental right to travel and I also have standing against other members of the enterprise that are domiciled outside of this routinely disappointing jurisdiction, which has repeatedly failed me. Let me begin by conclusively putting a death nail [*sic*] in the coffin of Apple's, Google's, and the Court's procedural tap dance and game playing through full

> disclosure of a prospective litigation strategy. I do not want there to be any doubt that setting procedural boobie traps is not an astute tactic here.

Docket No. 223, p. 9.

He proceeds to make a threat that Mrs. Lauren Dixon "is going to immediately file suit . . . if Judge Sharp does not vacate the abusive decision in Google." He states, "I've personally met with Senator Markey's senior political advisors at the Capitol," who "is [*sic*] watching both Courts for good cause." *Id.*, p. 9-10. He continues:

> To save the Court time, it should understand that if it tries to pull off the same abuse of discretion and procedural stunt here, Apple will also be named in Mrs. Dixon's litigation. Actually, Mrs. Dixon could name Apple regardless. Perhaps Judge Trauger could be assigned the case and a totally different outcome could manifest, since she is a female and pornography objectifies women.

*Id.*, p. 11.

> If Mrs. Dixon is compelled to sue because of Judge Knowles scheming, I would expect the court to also render an opinion on criminal liability for the state's district attorney's office to consider under T.C.A. § 39-17-902(a). District Attorney Glen Funk owes me a whole lot and I do not mind cashing in all chips to make him consider arresting the heads of tech companies for breaking state obscenity laws.

*Id.*, p. 12.

Plaintiff also argues that the Court is required to hold him to lower pleading standards because he is "technically not a lawyer." He further threatens:

> If the Court finds me to be an attorney subjected to advanced pleading standards, I will immediately file class action lawsuits against the defendants for the victims at She's Somebody's Daughter. . . . In the event that the Court does decide that I am a lawyer and that my complaint fails under rule 8, I will immediately file a lawsuit under 42 USC Sec. 1983 for violations of the 14[th]

11

> amendment against a host of TN state Judges in district court in the souther [*sic*] district of New York. If that occurs, Judge Ash, Judge Fishburn, Judge Smith, Judge Moreland, can personal [*sic*] thank Judge Knowles for the litigation I will put them through. But my advice to this court is to let me fight this controversy and not that one even though I have cultivated a zero tolerance policy for judicial activism and judicial misconduct. The toxic reach of the self-enriching good ole boy network hasn't made it's way far enough to my city of Manhattan.

*Id*., p. 14.

> On occasion I enjoy a good government thrashing because I know that trials produce character. Yet, over all, I do not really like getting treated like a patronized child. If anyone will do the bullying and the patronizing here it will be me against either the Court or the Defendant. I am an ardent opponent of pornography because of its direct link and tie to human trafficking and for how it personally injured me and my family. I have bombarded the Court's docket with plausible and credible evidence that establishes that the filterless products sold by the Defendant has [*sic*] a direct correlation with the demand side of human trafficking. I expect and demand that this action be allowed to advance forward. Judge Knowles should likely pack up and take his implausible values elsewhere. I expect Judge Sharp to vacate the unlawful and pro-sex trafficking decision in 3:14-cv-1313 [*Google*] which is rife with judicial arrogance and activism.[2]

*Id*., p. 23-24 (footnote added).

He also states:

> Emperor Obama's values are patently anti-American and it is not a stretch to find that so are Judge Knowles, if he does not allow me to proceed forward. I expect to see a manifest change of heart or I will pin him to the wall with the law for the sake of children and to

---

[2] Plaintiff's statement that he has "bombarded the Court's docket" is entirely correct. Throughout the course of this litigation, Plaintiff has filed various lengthy notices, memoranda, and exhibits, many of which are clearly not responsive to any filing made by Defendant. These include: Docket No. 89 (169 pages), Docket No. 92 (326 pages), Docket No. 103 (147 pages), Docket No. 104 (169 pages), Docket No. 108 (153 pages), Docket No. 113 (297 pages), Docket No. 124 (178 pages), Docket No. 147 (291 pages), and many others.

12

protect the integrity of Constitution and other laws.

Docket No. 223, p. 5.

Plaintiff's Response also includes almost 6 pages of something Plaintiff refers to as the "note section of the statute," which apparently pertains to a "first draft of Tennessee filter legislation" that Plaintiff has authored. Docket No. 223, p. 18-23. The relevance of this material to the issues before the Court is unclear.

In one of the few statements in his Response that has any bearing on the issues before the Court, he states: "Let's face it, (1) Rule 8 is at best 'aspirational . . . .'" Docket No. 223, p. 15 (footnote omitted).

The Court has set forth some of the allegations of Plaintiff's Complaint above. As the undersigned stated in *Google*, however, "It would be virtually impossible for the Court to convey the truly incredible nature of Plaintiff's Complaint. . . . The majority of the allegations are simply bizarre." Case No. 3:14-cv-1313, Docket No. 210, p. 4. Moreover, the precise basis of Plaintiff's claims is largely indecipherable due to the incredibly verbose and sermonizing nature of his pleading.

As Judge Sharp recognized in *Google*, Fed. R. Civ. P. 41(b) authorizes the dismissal of an action where a Plaintiff has failed to comply with the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 8(a)(2) and (d)(1). Docket No. 235, Case No. 3:14-cv-01313. A number of authorities agree with this proposition. *See Wynder v. McMahon,* 360 F.3d 73, 77-78 (2nd Cir. 2004); *Mangan v. Weinberger*, 848 F.2d 909, 911 (8th Cir. 1988); *Nevijel v. North Coast Life Insurance Co.,* 651 F.2d 671, 673 (9th Cir. 1981); *Galindo v. Lampela,* 2013 U.S. App. LEXIS 5413, *3 (10th Cir.). *See also Plymale v. Freeman,* 191 U.S. App. LEXIS 6996 (6th Cir.)

(Affirming dismissal for failure to comply Rule 8(a)); *Jones v. National Communications & Surveillance Networks,* 266 Fed. Appx. 31, 32 (2nd Cir. 2008) (same); *Flayter v. Wisconsin Department of Corrections,* 16 Fed. Appx. 507, 509 (7th Cir. 2001) (same).

"Taken together, Rules 8(a) and 8(e)(1) [now Rule 8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Ciralsky v. C.I.A.,* 355 F.3d 661, 669 (D.C. Cir. 2004) *quoting In Re Westinghouse Securities Litigation*, 90 F.3d 696, 702 (3rd Cir. 1996) (further citations omitted). Moreover, "[a] complaint which fails to comply with rules 8(a) and 8(e) [now 8(d)] may be dismissed with prejudice pursuant to rule 41(b)'" *Nevijel,* 651 F.2d at 673.

Additionally, courts have found that a complaint violates Rule 8 and should be dismissed where it is unnecessarily lengthy, disorganized, argumentative, or includes inappropriate extraneous allegations. *See Morales v. New York*, 2014 U.S. Dist. LEXIS 71137, *14 (S.D.N.Y. May 22, 2014) (observing that "complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed . . . ."); *Smith v. City of Chattanooga*, 2010 U.S. Dist. LEXIS 134171, *4-5 (E.D. Tenn. Dec. 17, 2010) (dismissing complaint that is "replete with so much irrelevant information that the Court is unable to determine the precise nature of [plaintiff's] claims."); *Barnard v. Beckstrom*, 2007 U.S. Dist. LEXIS 38864. *9 (E.D. Ky. May 29, 2007) (finding complaint violated Rule 8 where it contained "circuitous diatribes far removed from the heart of the claim . . . ."); *Brown v. Knoxville News-Sentinel*, 41 F.R.D. 283 (E.D. Tenn. 1966) (dismissing 117 page complaint because it is "so prolix, loosely drawn and involved to as to be unintelligible").

"[A] complaint that is prolix and/or confusing makes it difficult for the defendant to file a

responsive pleading and makes it difficult for the trial court to conduct orderly litigation." *Schied v. Daughtrey,* 2008 U.S. Dist. LEXIS 104697, *4 (E.D. Mich. Dec. 29, 2008) ("When faced with voluminous pleadings, neither the Court nor opposing counsel should be required to expend time and effort searching through large masses of conclusory, argumentative, evidentiary and other extraneous allegations in order to discovery whether the essentials of claims asserted can be found in such a melange."); *see also Nevijel*, 651 F.2d at 674 (dismissing, with prejudice, a complaint that was "verbose, confusing and almost entirely conclusory."). Apple should not be required to sort through the Third Amended Complaint in order to attempt to decipher the basis for Plaintiff's claims.

Dismissal of such improper complaints is necessary as a result of the undue burden that is placed on both the parties responding to the complaint and on the court. *See Jones*, 266 Fed. Appx. at 32 ("The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.") (internal quotation marks and citations omitted); *Flayter*, 16 Fed. Appx. at 509 ("A prolix and confusing complaint should be dismissed because it makes it difficult for the defendant to file a responsive pleading and for the court to conduct orderly litigation.") (citation omitted); *Smith*, 2010 U.S. Dist. LEXIS 134171 at *4 (explaining that improper pleadings "place[] an intolerable toll on the Court's docket, lead[] to unnecessary discovery, and impose[] unwarranted expense on the litigants, the Court, and the Court's personnel and resources.").

In *Flayter*, the plaintiff filed a complaint that was 116 pages long, in which he alleged that the Wisconsin Department of Corrections and several of its employees were liable under 42

U.S.C. § 1983 as a result of their failure to provide the plaintiff with proper medical care. *Flayter*, 16 Fed. Appx. at 508. Although the court was able to discern the basis of the plaintiff's claims and acknowledged that the plaintiff's allegations were organized in chronological detail, it nevertheless found that due to the complaint's "length and level of detail," the defendants would be burdened in attempting to file a responsive pleading. *Id* at 508-509.[3] As a result, the court concluded that the complaint was not a "short and plaint statement" of the plaintiff's claim, and was thus subject to dismissal for violating Rule 8. *Id*. at 509.

The Third Amended Complaint is neither short nor plain. It's allegations are not simple, concise, and direct. It is 90 pages in length and contains 100 footnotes. The Court recognizes that length alone is not the problem, but the Third Amended Complaint is essentially a thesis or dissertation discussing Plaintiff's personal beliefs regarding a multitude of irrelevant and improper topics. Given these factors, responding to the Third Amended Complaint would place an undue burden on Apple, and the continuation of this action would impose a huge burden on the Court in attempting to manage this case.

Plaintiff's *pro se* status does not save his Complaint. Although *pro se* complaints are generally held to less stringent pleading standards, Plaintiff is an attorney and, therefore his filings are not entitled to such deference. *See Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) ("Smith is a lawyer proceeding pro se. While we are generally obliged to construe pro se pleadings liberally, we decline to do so here because Smith is a licensed attorney.") (citations omitted); *Larsen v. JBC Legal Group, P.C.*, 533 F. Supp. 2d 290, 295, n.2 (E.D.N.Y. 2008)

---

[3] The Third Amended Complaint likewise contains excruciating detail – not regarding factual allegations in support of any cognizable legal claim, but rather regarding myriad irrelevant matters.

("[T]he rules afforded pro se litigants are not relaxed when that litigant is also an attorney"); *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 234 (D.D.C. 2007) ("Because plaintiff is an attorney, she is not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff because an attorney is presumed to have a knowledge of the legal system . . . .").

As indicated above, a dismissal under Rule 41(b), for failure to comply with Rule 8, may be with prejudice. *See Hearns v. San Bernardino Police Dep't,* 530 F.3d 1124, 1129 (9th Cir. 2008) ("Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss a complaint with prejudice for failure to comply with Rule 8(a).") (citing *Nevijel,* 651 F.2d at 673). In the present case, the Third Amended Complaint should be dismissed with prejudice because its violation of Rule 8 is so extraordinary. The complaint in *Nevijel* was sufficiently verbose to be dismissed with prejudice, but it was a mere 48 pages. 651 F.2d at 672-73.

Moreover, the extraneous content that makes up a great deal of the Complaint's 90 pages is not merely irrelevant, but to a large extent is also gratuitously insulting to numerous individuals and organizations, including many who clearly have nothing at all to do with the pornography-access issues the Third Amended Complaint attempts to raise.

Apple also raises a second reason why the instant Complaint should be dismissed, namely Fed. R. Civ. P. 12(b)(1). The Sixth Circuit has stated:

> [A] district court may at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of the complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion.

*Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir. 1999) *citing Hagans v. Lavine,* 415 U.S. 528, 536-37 (1974).

It is readily apparent that Plaintiff's Third Amended Complaint is subject to dismissal pursuant to Fed. R. Civ. P 12(b)(1) and *Glenn.*

For all the foregoing reasons, the undersigned recommends that the instant Motion (Docket No. 219) be GRANTED and that this action be DISMISSED WITH PREJUDICE. Any pending Motions should be DENIED AS MOOT.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. Clifton Knowles
United States Magistrate Judge